Filed 1/7/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>  Respondent;<br><br>ALIREZA JALALIPOUR,<br><br>  Real Party in Interest. | G049679<br><br>(Super. Ct. No. 13CF0500)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Robert R. Fitzgerald, Judge. (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Petition granted.

Kamala D. Harris Attorney General and Michael W. Whitaker, Deputy Attorney General for Petitioner.

No appearance by Respondent.

Law Offices of Mark W. Fredrick, Mark W. Fredrick and Ronald G. Brower for Real Party in Interest.

The People petitioned for a writ of mandate ordering the respondent court to vacate its ruling reducing the felony charges against Alireza Jalalipour to misdemeanors and we issued an order to show cause. We hold that, unless the People consent to a reduction of the charged offense, the establishment of the defendant's guilt, whether by plea or trial, must *precede* a court's reduction of a wobbler to a misdemeanor under Penal Code section 17, subdivision (b)(3).[1] We also hold that, in the absence of the People's consent, the court's reduction of the charged felonies to misdemeanors, and then allowing defendant to plead guilty to the misdemeanors, constituted an unlawful judicial plea bargain. Accordingly, we grant the People's petition.

## FACTS[2]

Jalalipour (through a corporation) owned and operated 12 Subway restaurants acquired between 2001 and 2009. From April 2004 through March 2010, he underreported the collected sales tax by about 75 percent, resulting in an unpaid tax liability of almost $1,400,000.

Around May of 2010, the Board of Equalization (the Board) selected Jalalipour's company for a routine civil audit. In June 2010, the Board auditor Jocelyn Tsai met with Jalalipour's wife, Behina Baher. Baher provided Tsai with copies of weekly sales summary sheets. The weekly summaries showed the amount of sales tax collected, cost of sales, total sales, store location, and dates. Tsai was not allowed to take or copy the weekly summaries. Tsai organized the data on a spreadsheet. She noticed

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] Because the petition challenges an order underlying a grant of probation following a guilty plea, the nonprocedural facts are taken from evidence adduced at the preliminary hearing.

that information was missing for some weeks and asked Baher to get the missing data from the franchisor. Baher did not provide the missing documentation.

Tsai received, from her supervisor, some data obtained from the franchisor. Tsai asked Baher about a large discrepancy between the sales tax collected and the sales tax paid to the Board. Baher said that if the computers were wrong and charged the wrong amount of tax, it was not the government's money. Tsai informed her that if the tax is charged, it must be sent to the Board.

In May 2011, a search warrant was served on Jalalipour's 12 restaurants and his residence. The Board agents located some draft sales tax returns and a worksheet at Jalalipour's residence (some found under some towels in a hamper). Worksheets indicated that Jalalipour calculated the amount of taxable sales he reported to the Board by first determining the figure he wanted to report for "sales tax collected," and then calculating the amount of taxable sales he needed to report in order to support that number.

In February 2013, the People filed a felony complaint charging Jalalipour with six counts of tax evasion (Rev. & Tax Code, §§ 7152, subd. (a), 7153.5), and one count of grand theft (§ 487, subd. (a)). The complaint also alleged that Jalalipour had committed two or more related felonies with a material element of fraud (§ 186.11, subd. (a)(2)), took property in an amount exceeding $1,300,000 (§ 12022.6, subds. (a)(3), (b)), and took funds of a value exceeding $100,000 (§ 1203.045).

Jalalipour was arraigned and entered a plea of not guilty to all counts and denied the enhancements.

On June 11, 2013, a preliminary hearing was held in front of Judge Robert R. Fitzgerald, who held Jalalipour to answer on all counts and sustained all of the enhancements.

On June 19, 2013, the People filed an information against Jalalipour, alleging the same charges and special allegations that had been contained in the felony complaint.

In a subsequent meeting in Judge Fitzgerald's chambers, defense counsel asked the court to reduce all of Jalalipour's crimes to misdemeanors pursuant to sections 18 and 17, subdivision (b) (section 17(b)).[3] The People filed an opposition to the defense's motion to reduce the charged offenses to misdemeanors.

On December 17, 2013, the court heard Jalalipour's motion to reduce his felony charges to misdemeanors. At the outset, the court asked, "Is it also the defense's indication that you intend to plead guilty to a misdemeanor should the court [reduce the charges to misdemeanors]?" Defense counsel replied, "Yes." Defense counsel asserted that the contract between Jalalipour and Subway specifies "that if he sustains a felony conviction, he can lose all his stores, the sole source of his income for his family and his two children."

The People argued that *People v. Silva* (1995) 36 Cal.App.4th 231 "makes it very clear that once the court issues a bindover at preliminary hearing it loses jurisdiction to . . . reduce [the charges] to misdemeanors prior to the adjudication." The People stated that "[a]t this point the defendant has to plead a felony, and the court in its sentencing discretion can . . . reduce it to a misdemeanor, but the court does not have the option to take a plea to a misdemeanor at this point in the proceeding because the defense did not make the motion at the appropriate time."

The trial court granted Jalalipour's motion and declared all the charges to be misdemeanors. The court explained its primary reason for granting the motion was that, otherwise, Jalalipour was likely "to lose every franchise that he owns."

---

[3] Although the record contains no evidence of this meeting, both parties agree it took place.

4

After the court reduced the charges to misdemeanors, Jalalipour entered guilty pleas to the misdemeanor counts. The court dismissed the enhancements, placed Jalalipour on probation for three years, and, prior to hearing from the People regarding sentencing, ordered that he serve no time in custody.

DISCUSSION

*The People's Writ Petition is Authorized Under Section 1238, Subdivision (d)*

Jalalipour argues the People lack statutory authority to bring this writ petition under section 1238, subdivision (d). Section 1238, subdivision (d) provides in relevant part: "[T]he people may seek appellate review of any grant of probation . . . by means of a petition for a writ of mandate . . . . The review of any grant of probation shall include review of any order underlying the grant of probation."

The court's order here underlies its probation grant within the meaning of section 1238, subdivision (d). In *People v. Douglas* (1999) 20 Cal.4th 85, 93 (*Douglas*), our Supreme Court stated that "if the People seek, in substance, reversal of the probation order, the appeal is barred by [section 1238,] subdivision (d) however they may attempt to label the order appealed from." *Douglas* observed that in *People v. Robles* (1997) 52 Cal.App.4th 157, 158, "the People's appeal was purportedly from the reduction to misdemeanors of two wobblers charged as felonies, rather than from the subsequent probation order." (*Douglas*, at p. 95.) Under those circumstances, *Robles* stated the People had no right to appeal (*Robles*, at p. 159) and were instead required to file a writ petition under section 1238, subdivision (d) (*Robles*, at p. 160). *Douglas* approved *Robles* to the extent its holding rested "on the fact the People were in substance attacking the probation order." (*Douglas*, at p. 95.)

Similarly, in *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968 (*Alvarez*), our high court addressed on its merits a writ petition that challenged orders of

5

the trial court reducing a felony conviction to a misdemeanor under section 17(b)(3), and granting probation to the defendant. (*Id*. at pp. 973-974.)

Here, because the People seek appellate review of an order underlying the court's grant of probation to Jalalipour, the People appropriately filed a writ petition pursuant to section 1238, subdivision (d).

*The Court Improperly Reduced Jalalipour's Felony Charges to Misdemeanors Prior to His Entering a Plea to the Felony Charges*

The People contend the court had no authority under section 17(b) to grant Jalalipour's motion at the point in the proceeding when it was heard. We agree with this contention. Furthermore, as an independent ground for our reversal of the court's order, we hold the court engaged in unlawful judicial plea bargaining. Accordingly, we do not address the People's alternative contention that the court abused its discretion by failing to weigh the factors relevant to a section 17(b) motion.

Under section 17(b), when a court has discretion to punish a crime either by imprisonment in the state prison or imprisonment in a county jail under section 1170, subdivision (h), or by fine or imprisonment in the county jail, the crime "is a misdemeanor for all purposes under the following circumstances: [¶] (1) After a judgment imposing a punishment other than imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170"; "(3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor"; or "(5) When, at or before the preliminary examination or prior to filing an order pursuant to Section 872, the magistrate determines that the offense is a misdemeanor, in which event the case shall

6

proceed as if the defendant had been arraigned on a misdemeanor complaint." (§ 17(b)(1), (3), & (5).)[4]

Here, the court's order reducing the charges to misdemeanors was unauthorized under section 17(b). No judgment, entry of a plea, or finding of guilt had occurred to bring subdivisions (b)(1) or (b)(3) into play. Nor did subdivision (b)(5) apply; the preliminary examination had already taken place and Jalalipour had been held to answer pursuant to section 872.

Courts have consistently interpreted section 17(b) in accordance with its clear language. In *People v. Silva*, *supra*, 36 Cal.App.4th at page 233, the trial court "purported to grant a motion to reduce a so-called 'wobbler' offense to a misdemeanor before the adjudication of guilt" but after the preliminary examination, bindover, and filing of an information. *Silva* reversed the order because the trial court had lacked jurisdiction to grant the motion. (*Ibid.*) The "plain language of section 17[(b)(5)] deprive[d] the court of such authority." (*Id.* at p. 235.) After the magistrate had held the defendant to answer pursuant to section 872 and the People had filed an information, section 17(b)(5) was inapplicable and "the events had not yet occurred to trigger the superior court's authority to consider reduction to a misdemeanor under section 17[(b)(1) or (3)]." (*Silva*, at p. 235.)

*People v. Booker* (1994) 21 Cal.App.4th 1517, 1520 (*Booker*) reversed the trial court's orders granting the defendants' pretrial motions to reduce charges to misdemeanors. The Court of Appeal explained that the orders had "effectively usurped the charging prerogative of the prosecutor [and] lacked underlying statutory authority." (*Id.* at p. 1521.)

In *Alvarez*, *supra*, 14 Cal.4th 968, our Supreme Court cited *Booker* with approval, stating: "[S]ection 17, subdivision (b)(5) . . . sets forth the magistrate's

---

[4]      Section 17(b)(2) and (b)(4) are inapplicable here.

authority to determine a wobbler to be a misdemeanor 'at or before the preliminary examination or prior to filing an order pursuant to Section 872 . . . .' No provision of section 17, subdivision (b), authorizes the superior court judge to do so prior to judgment or a grant of probation." (*Alvarez*, at p. 973, fn. 2.) Elsewhere in the opinion, our Supreme Court reiterated that section 17(b)(3) applies "after a grant of probation." (*Alvarez*, at p. 974.)

A grant of probation occurs *after* a plea, finding, or verdict of guilty. (§ 1191 ["In a felony case, after a plea, finding, or verdict of guilty . . . , the court shall appoint a time for pronouncing judgment"]; Cal. Rules of Court, rule 4.433(a)(2) [at time set for sentencing under section 1191, sentencing judge must determine whether to grant probation to eligible defendant].)

Jalalipour concedes that section 17's language "appears to operate to prevent a trial court's reduction of a felony to a misdemeanor after the preliminary hearing but prior to the entry of a plea or a finding of guilt," but he asks this court to ignore the statute's language because, in his view, the timing of a section 17(b) motion "is a distinction without a difference, especially following unification of the Superior and Municipal Courts which occurred in 1998." We decline Jalalipour's request for us to ignore the statute's plain language. Whether section 17(b) contains outdated language is for the Legislature to decide.

The dissent interprets section 17(b)(3)'s phrase, "at the time of granting probation," to encompass the entire "hearing" at which a probation grant takes place. In doing so, the dissent focuses solely on the temporal proximity of the misdemeanor declaration and the granting of probation, but fails to address whether the plea of guilty must be to the charged felony or to the reduced misdemeanor. Instead, the dissent refers to a generic unspecified "guilty plea." This focus misstates the issue. The question here is not whether the phrase "at the time of granting probation" encompasses the entire "hearing," but whether the court is authorized to reduce the felony charge to a

8

misdemeanor over the People's objection *before* the defendant pleads or is found guilty of the charged felony. The dissent blurs the fundamental distinction between the People's role in charging an offense and the court's role in sentencing a defendant.

In support of the dissent's conclusion, our colleague relies in part on Justice Kennard's dissent in *Douglas* which, in addition to being a dissenting opinion, addresses a wholly different issue, having nothing to do with the question we must decide. (*Douglas*, *supra*, 20 Cal.4th at p. 96 (dis. opn. of Kennard, J.).) In *Douglas*, the majority held the People were authorized under section 1238, subdivision (a)(5) (which permits the prosecution to *appeal* from postjudgment orders) to appeal from the trial court's section 17(b)(3) order reducing a charge to a misdemeanor. (*Douglas*, at p. 88.) The majority concluded the People's appeal was *not* barred by section 1238, subdivision (d) (which permits the prosecution only to petition for *writ* relief from a probation grant) (*Douglas*, at p. 94) in part because the trial court reduced the charge to a misdemeanor *after* it granted probation (*Douglas*, at pp. 88, 91).

In Justice Kennard's dissent, she argued, "[I]t is only by writ of mandate, and not by appeal, that the People can seek review of a trial court's section 17(b)(3) declaration at the initial sentencing hearing reducing a felony to a misdemeanor." (*Douglas*, *supra*, 20 Cal.4th at p. 99 (dis. opn. of Kennard, J.).) In her "view, when a court declares a wobbler to be a misdemeanor *at any time* during the same sentencing hearing at which the court grants probation, the declaration occurs 'at the time of granting probation' for purposes of section 17(b)(3), and it is thus a part of the court's probationary order from which the People can seek review only by petition for writ of mandate [citation]." (*Id.* at p. 97 (dis. opn. of Kennard, J.).) Within this context, Justice Kennard stated that a section 17(b)(3) declaration "is part of the trial court's disposition of the case that is indivisible from the court's suspension of imposition of sentence and grant of probation." (*Douglas*, at p. 99 (dis. opn. of Kennard, J.).)

9

Justice Kennard did *not* opine that a trial court may make a section 17(b)(3) declaration *before* a defendant pleads guilty to the *charged offense*. Because the timing of the defendant's guilty plea was not an issue in *Douglas*, Justice Kennard confined her analysis to situations where a trial court grants probation and makes a section 17(b)(3) declaration at a single or initial "sentencing" hearing. (*Douglas*, *supra*, 20 Cal.App.4th at pp. 96-99 (dis. opn. of Kennard, J.).) It is axiomatic that sentencing (or granting probation) takes place *after* the defendant's guilt is established, whether by verdict or plea.

Our holding — that the establishment of the defendant's guilt, whether by plea or at trial, must *precede* a court's section 17(b)(3) reduction of a wobbler to a misdemeanor — is neither nonsensical nor lacking in rational basis as suggested by our dissenting colleague. Whether a defendant must plead guilty to a charged felony, as opposed to a misdemeanor, can have significant collateral consequences. "The provisions of section 17(b) are not necessarily conclusive . . . , and the Legislature sometimes has explicitly made clear its intent to treat a wobbler as a felony for specified purposes notwithstanding a court's exercise of discretion to reduce the offense to a misdemeanor. For example, under Business and Professions Code section 6102, subdivision (b), an attorney who pleads guilty to, or is found guilty of, a wobbler charged as a felony is deemed convicted of a felony and subject to immediate suspension from the practice of law, even if the offense has been reduced to a misdemeanor pursuant to section 17(b)(1) or (b)(3). (See Gov. Code, § 1029, subd. (a) [disqualifying from employment as a peace officer any person who has been adjudged guilty of a felony, notwithstanding reduction of the offense to a misdemeanor pursuant to § 17(b)].)" (*People v. Park* (2013) 56 Cal.4th 782, 794.) Lawmakers have also "made clear their intent to bring within the reach of the Three Strikes law a defendant whose wobbler was reduced to a misdemeanor after the time of initial sentencing." (*Ibid.*) Here, the court reduced Jalalipour's charges to misdemeanors, and then allowed him to plead guilty to

10

those misdemeanors, precisely because of the collateral consequences Jalalipour might suffer from pleading guilty to a felony.[5]

The dissent contends that, because a magistrate can reduce a wobbler to a misdemeanor under section 17(b)(5), a trial court is logically authorized to do so under section 17(b)(3), even before the defendant pleads or is found guilty. But a magistrate's authority under section 17(b)(5) relates to an important and unique purpose of preliminary examinations. A preliminary hearing operates """"as a judicial check on the exercise of prosecutorial discretion"'" and helps ensure '"that the defendant [is] not . . . charged excessively"'" [citation], which can confer a '"tactical advantage . . . upon the prosecutor in respect to plea bargaining."""" (*People v. Herrera* (2006) 136 Cal.App.4th 1191, 1202.)

If a magistrate determines that a wobbler offense "is a misdemeanor" under section 17(b)(5), the People may not move to reinstate the felony complaint under section 871.5. (*People v. Williams* (2005) 35 Cal.4th 817, 824.) Conversely, if the magistrate finds the People have appropriately charged the defendant with a felony, the defendant is held to answer for the felony charge. (§ 872, subd. (a).) Thereafter, only the prosecution may reduce the charge, because the executive alone is entrusted with "the charging function" and has the sole "prerogative to conduct plea negotiations." (*People v. Clancey* (2013) 56 Cal.4th 562, 574 (*Clancey*); *id*. at p. 570.)

Within this framework, the trial court may give the defendant an indicated sentence (not a plea bargain). An indicated sentence reflects "the trial court's considered judgment as to the appropriate *punishment* in the case, regardless of whether [the] defendant is convicted by plea or at trial . . . ." (*Clancey*, *supra*, 56 Cal.4th at p. 576,

---

[5] The potential consequence to Jalalipour is the loss of a type of livelihood arguably involving public trust (similarly to livelihoods under Bus. & Prof. Code, § 6102, subds. (a), (b) & Gov. Code § 1029, subd. (a)) and affecting the good will of the Subway brand. As stated in this opinion's factual recitation, Jalalipour's wife implied that their stores' computers had inaccurately overcharged sales tax to customers.

11

italics added.)  In other words, "the indicated sentence must be the same punishment the court would be prepared to impose if the defendant were convicted at trial."  (*Id.* at p. 575.)  Thus, a court may lawfully indicate that, in its best judgment, regardless of whether guilt is established by plea or at trial, the appropriate punishment would be to grant probation and reduce a wobbler to a misdemeanor.  If "'the defendant pleads "guilty to all charges . . . so all that remains is the *pronouncement of judgment and sentencing*,"'" the court may proceed to carry out its indicated sentence.  (*Id.* at p. 570, italics added.)

In contrast, unlawful judicial plea bargaining occurs when a court offers the defendant more lenient treatment or another inducement to enter a guilty plea.  (*Clancey*, *supra*, 56 Cal.4th at p. 575.)  An indicated sentence offers no such inducement.  "[A]n indicated sentence is not a promise that a particular sentence *will* ultimately be imposed at sentencing."  (*Id.* at p. 576.)  In Jalalipour's case, the court went beyond merely promising to reduce his charges to misdemeanors if he pleaded guilty; the court actually did so prior to taking his plea, but only after securing Jalalipour's commitment "to plead guilty to a misdemeanor should the court [reduce the charges]."  In other words, the court offered Jalalipour an inducement to plead guilty.  By doing so, the court engaged in unlawful judicial plea bargaining.

Finally, Jalalipour argues section 17 violates the equal protection rights of persons charged by indictment, since they do not receive a preliminary hearing and have no opportunity to make a section 17(b)(5) motion.  Jalalipour, however, was charged by felony complaint and did receive a preliminary hearing.  He therefore lacks standing to bring this claim because he is not a member of the class allegedly discriminated against.  (*Rubio v. Superior Court* (1979) 24 Cal.3d 93, 103.)

In sum, the court erred by reducing Jalalipour's felony charges to misdemeanor charges.

DISPOSITION


The petition is granted.  Let a peremptory writ of mandate issue, ordering the trial court to (1) vacate its order which reduced the felony charges against Jalalipour to misdemeanors and dismissed the special allegations, (2) set aside his guilty plea, and (3) reinstate the information against him.  The order to show cause is discharged.



IKOLA, J.

I CONCUR:


RYLAARSDAM, ACTING P. J.


13

**THOMPSON, J.,** Dissenting—I respectfully dissent. Penal Code section 17, subdivision (b)(3)[1] authorizes a court to declare "wobbler" offenses to be misdemeanors at any time during a single hearing in which a defendant pleads guilty and a court grants probation. It does not matter whether that declaration occurs immediately before or immediately after a defendant pleads guilty, unless unlawful judicial plea bargaining occurs as a result.

*1. Relevant Procedural History*

On November 21, 2013, the parties had an unreported chambers settlement conference. Defense counsel requested the court to exercise its discretion to reduce the wobblers to misdemeanors. The court indicated it was inclined to grant that request. The prosecutor was given time to file opposition.

On December 17, a hearing was held in open court. At the outset the court stated: "The defense has made an application for the court to consider reducing the entirety of the charges as to this defendant under [section] 17(b) of the Penal Code to a misdemeanor. I have an opposition filed by the People."

The court next inquired, "Is it also the defense's indication that you intend to plead guilty to a misdemeanor should the court do that?" Defense counsel stated: "Yes. I have the [guilty plea] forms in that regard prepared based on the court's preliminary indication. I submitted those to the clerk."

After hearing argument from defense counsel, the court said, "Deliver the *Tahl* form to the clerk, please." (See *In re Tahl* (1969) 1 Cal.3d 122.) Defense counsel replied, "I submitted that." Next, the court heard argument from the prosecutor, and further argument from defense counsel and the prosecutor.

Following argument, the court ruled: "The court adopts all reasons in the brief and as stated by both sides as reasons to do what I am about to do. I declare all counts to be misdemeanors under [section] 17(b) slash 18 [*sic*] of the Penal Code."

_____

[1] All further statutory references are to the Penal Code.

The court then said, "It doesn't look like the defendant has signed up." Defense counsel replied, "He hasn't sign [*sic*] a probation page." The court responded in part, "I want you to execute the final [probation] page." Immediately thereafter, the court took the guilty plea, suspended imposition of sentence, and granted Jalalipour probation.

*2. Section 17, Subdivision* (*b*)(*3*)

Section 17, subdivision (b)(3) (section 17(b)(3)), authorizes a court to declare wobblers to be misdemeanors "at the time of granting probation." We are required to give these "words their ordinary and usual meaning and [view] them in their statutory context." (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1216.)

Consistent with these requirements, the words "at the time of granting probation" have been construed to mean *at any time* during a single hearing in which a defendant pleads guilty and a court grants probation. (Cf. *People v. Douglas* (1999) 20 Cal.4th 85, 96-97, dis. opn. of Kennard, J.) This is correct because the Legislature set no limit on when during that hearing a court must make the declaration. (*Id.* at p. 99.)

Here, the court declared the wobblers to be misdemeanors, accepted Jalalipour's guilty plea, and granted probation, all in a single hearing. Therefore, the court's action declaring the wobblers to be misdemeanors was legally inseparable from and occurred "at the time of granting probation" as authorized by section 17(b)(3).

None of the cases cited by the majority hold otherwise. *People v. Silva* (1995) 36 Cal.App.4th 235 held the trial court erred by granting the defendant's motion pursuant to section 17, subdivision (b)(5), but said nothing about section 17(b)(3). In fact, the *Silva* court expressly stated, "a request under section 17, subdivision (b)(1) or (3) is not before us." (*Silva*, at p. 236, fn. 2.)

*People v. Booker* (1994) 21 Cal.App.4th 1517 is equally inapposite. The trial court in *Booker* did not rely on section 17, subdivision (b), and the defendants "did not seek a determination under section 17, subdivision (b) that the offenses are punishable only as misdemeanors." (*Booker*, at p. 1521, fn. omitted.)

2

Likewise, insofar as is relevant here, *People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 973, footnote 2, merely confirms, "No provision of section 17, subdivision (b), authorizes the superior court judge to [declare a wobbler to be a misdemeanor] prior to judgment *or a grant of probation*." (Italics added.)

The majority makes a court's authority under section 17(b)(3) turn on whether the words declaring the wobblers to be misdemeanors are spoken immediately before or immediately after a defendant pleads guilty. However, the majority cites no case, statute or rule which supports a "before and after" distinction in construing section 17(b)(3), and it makes no sense in this statutory context. There is no reason why the Legislature would grant authority in one situation and not the other.

The majority asserts the real question is whether the Legislature authorized a court to exercise its section 17(b)(3) discretion before an adjudication of guilt, whether by way of plea or trial. But if guilt adjudication were intended to be the touchstone, then why did the Legislature authorize a magistrate to declare wobblers to be misdemeanors without requiring guilt adjudication, up to 60 days before a preliminary examination occurs? (§ 859b; compare § 17, subds. (b)(3) & (b)(5).) Surely a magistrate is not in a better position to perform a judicial check on the exercise of prosecutorial discretion before a preliminary examination, than a judge is after a preliminary examination.

*3. Indicated Sentence*

The majority also holds the court engaged in unlawful judicial plea bargaining, since the court went beyond merely promising to reduce the wobblers to misdemeanors if Jalalipour pleaded guilty, and actually did so before taking his plea. But a court can lawfully indicate a sentence which contemplates the exercise of its discretion to declare wobblers to be misdemeanors under section 17, subdivision (b). (*People v. Clancey* (2013) 56 Cal.4th 562, 579-580 (*Clancey*).) And, as discussed above, the court here properly declared the wobblers to be misdemeanors at the time of granting probation as authorized by section 17(b)(3). Thus, no unlawful judicial plea bargaining occurred.

Ironically, if the court had followed the majority holding and required Jalalipour to plead guilty to the wobblers as felonies, as a condition to exercising its discretion to make them misdemeanors under section 17(b)(3), then the lawful indicated sentence might have become an unlawful plea bargain. The relative certainty of a misdemeanor sentence now, rather than a potential felony sentence later could be a powerful but prohibited "inducement to enter a guilty plea." (*Clancey*, *supra*, 56 Cal.4th at p. 575.) Recognizing "an indicated sentence is not a promise" (*id.* at p. 576), no rational guilty defendant would ever take the risk that a court would change its mind.

Finally, it made no difference whether Jalalipour pleaded guilty to the charged offenses as felonies or as misdemeanors. These wobblers are subject to the general rule rather than any of the offense specific exceptions noted by the majority. Consequently, once the charged offenses were reduced to misdemeanors under section 17(b)(3) they became misdemeanors *for all purposes*. (§ 17, subd. (b); *People v. Park* (2013) 56 Cal.4th. 782, 793-795.) They did not constitute prior felony convictions. (*People v. Camarillo* (2000) 84 Cal.App.4th. 1386, 1390.)

*4. Conclusion*

I believe the court acted within its authority under section 17(b)(3), and we should consider whether the court abused its discretion as the People contend.


THOMPSON, J.

4