Filed 7/11/24  P. v. Richmond CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061615 |
| v. | (Super. Ct. No. 22HF0547) |
| ERICA KELLY RICHMOND, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Derek G. Johnson, Judge.  Affirmed.  Request for judicial notice denied.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel

Rogers and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

*        *        *

Facing drug sale and other charges, Erica Kelly Richmond pleaded guilty to the sheet. The trial court gave her a choice between two sentences. Under the first sentence, she would effectively serve five more months in jail and two years of probation; under the second, six more days in jail and 20 months of mandatory supervision. To choose the second, she had to sign a document — like a *Watson* advisement,[1] but for the sale of drugs — titled "Advisement and Waiver of Rights for a Misdemeanor/Felony Guilty Plea [¶] Addendum (Controlled Substances Advisement)" (the murder advisement). She chose the second sentence.

Richmond now appeals, claiming the requirement she sign the murder advisement as a condition of her sentence was an act in excess of the trial court's jurisdiction. She asks us to strike the murder advisement but otherwise leave her sentence intact, for two main reasons. First, the murder advisement was the product of improper judicial plea bargaining. Second, the murder advisement cannot be used against her in future criminal proceedings because it violates the separation of powers doctrine; it is contrary to the law of implied malice murder; it is contrary to public policy; it violates her privilege against self-incrimination; and she cannot voluntarily, knowingly, and intelligently consent to an illegal advisement. The People

---

[1] A *Watson* advisement warns a person that driving while under the influence of alcohol or drugs is extremely dangerous to human life and that a driver so impaired may be charged with murder if someone is killed as a result. (*People v. Watson* (1981) 30 Cal.3d 290, 296 (*Watson*); Veh. Code, § 23593.)

2

dispute the merits of these contentions. But they also contend we need not reach the merits and may instead affirm the judgment on grounds of waiver, estoppel, or lack of justiciability.

We agree with the People. Richmond signed a *Tahl*[2] form and waived her right to appeal the sentence. Although there is an exception to the general rule of waiver, that exception is unavailable to Richmond because she received a specific bargained for sentence. (*People v. Hester* (2000) 22 Cal.4th 290, 295 (*Hester*).) Richmond also forfeited her claim of improper judicial bargaining because she did not object to it below. Finally, Richmond's challenges are not justiciable unless and until the murder advisement is used against her in a future proceeding. On these grounds, we affirm the judgment and decline to reach the merits of Richmond's appeal.

## FACTS

Richmond was charged with felony possession of fentanyl for sale (Health & Saf. Code, § 11351; count 1); felony possession of methamphetamine for sale (Health & Saf. Code, § 11378; count 2); identity theft with a prior conviction (Pen. Code, § 530.5, subds. (c)(2), (3); count 3); and possession of a payment card scanning device (Pen. Code, § 502.6, subd. (a); count 5).[3] She pleaded not guilty.

### I.

### *The Change of Plea and Sentencing*

At a hearing to change her plea, Richmond withdrew her not guilty plea and made a "[p]lea to the [c]ourt." At some point before

---

[2]     *In re Tahl* (1969) 1 Cal.3d 122, 132 (*Tahl*).

[3]     All further statutory references are to the Penal Code unless otherwise stated.

sentencing, the trial court offered Richmond a choice of two sentences:
(1) 270 days in county jail, plus two years of formal probation; or (2) a two-year sentence split between 120 days in county jail and 20 months of mandatory supervision. Selection of the second sentence was conditioned on Richmond signing the murder advisement.[4] Richmond chose the second sentence.

At the change-of-plea hearing, the trial court stated it "ha[d] a packet of documents" with Richmond's name indicating she intended to plead guilty. She confirmed that was her intention, and the court advised the maximum penalty for her offenses was six years four months in county jail.

The trial court then asked Richmond to confirm her sentencing choice: "Is it your understanding that in exchange for pleas of guilty you will be sentenced to the Orange County jail for two years, and that two-year sentence will be split as follows: 120 days of incarceration followed by 20 months of mandatory supervision with credit for 114 days served thus far. You will pay some fines and fees and make restitution for any losses that may have occurred?" Richmond replied, "Yes, sir."

After asking Richmond questions about documents she signed, the trial court found she made a knowing, intelligent, and voluntary waiver

---

[4] That the trial court gave two sentencing choices is not reflected in the court minutes or the reporter's transcript. Richmond instead relies on a declaration filed by Deputy Public Defender Elizabeth Khan declaring "on information and belief" that the trial court made the offers at the change of plea hearing or around that time. According to the minutes and the reporter's transcript, Khan was not present at the change of plea hearing. Indeed, Khan first appeared in the case for Richmond two months after the plea. But because the People appear to agree Richmond was offered two choices, we accept this fact as true.

of her constitutional rights and found a factual basis for her guilty plea. Defense counsel joined in the waivers but not the plea.

The court imposed the two-year split sentence chosen by Richmond, as follows: on count 1, the low term of two years in county jail; on counts 2 and 3, the middle term of two years; and on count 5, 10 days in county jail — with the terms on counts 2, 3, and 5 to run concurrently with the term on count 1. The sentence was split under section 1170, subdivision (h)(5), as follows: 120 days in county jail, followed by 20 months of mandatory supervision. Richmond received 114 days credit for time served (57 actual, 57 conduct). She thus had six more days to serve in county jail.

After the sentence was imposed, the prosecutor stated, "And I know as per the [c]ourt's offer Ms. Richmond has agreed to the Controlled Substances Advisement." With the court's permission, the prosecutor recited the murder advisement into the record:

"Ms. Richmond, you are hereby advised that the unlawful manufacture, sale or furnishing of any controlled substance poses grave health risks to those who ingest it, are exposed to it, or are affected by its manufacture . . . [(the first advisement)]. You are agreeing to plead guilty to Health and Safety Codes [*sic*] Sections 11351 and 11378. It is extremely dangerous to human life to unlawfully manufacture, sell or furnish any controlled substance [(the second advisement)]. [¶] In addition to the danger posed by the suspected controlled substance being sold or furnished, unbeknownst to the seller or furnisher, the controlled substance may contain other controlled substances such as fentanyl that significantly increases the threat to human life [(the third advisement)]. If you manufacture, sell or furnish any controlled substance and a person dies as a result of ingesting it,

5

being exposed to it, or its manufacture, you may be charged with murder [(the fourth advisement)]."

The prosecutor then asked, "Do you understand?" Richmond replied, "Yes."

Defense counsel again stated he did not join in the plea, explaining: "I joined in the waivers but not the plea because part of the offer required my client to agree to the waiver that [the prosecutor] just read into the record. I just want it noted for the record that I do believe the advisement is factually incorrect. I think it's government overreach. This was the People's attempt to circumvent the democratic process. These provisions were presented to the legislature, which rejected a similar extension to *Watson* as far as these types of cases are concerned. And democratically this was rejected. And I think it's improper overreach from the government and factually inaccurate. So I'm objecting to it. We don't know the ramifications. It is not the state of the law. And that's why I joined in the waivers but not the plea." (Italics added.)

II.

*The Plea Documents*

The plea documents were signed and filed on the same day as the change of plea. They include a *Tahl* form, a form of the terms and conditions of mandatory supervision, and the murder advisement. The *Tahl* form and mandatory supervision form indicate they are part of a "Plea to the Court;" both are signed by Richmond and her counsel but not the prosecutor.

On the *Tahl* form, handwritten near defense counsel's signature are the words "Join in waiver – Ø in plea." The *Tahl* form includes a waiver of appeal rights initialed by Richmond: "I waive and give up my right to appeal from any and all decisions and orders made in my case . . . . I waive

6

and give up my right to appeal from my guilty plea. I waive and give up my right to appeal from any legally authorized sentence the court imposes which is within the terms and limits of this plea agreement."

The murder advisement is signed by Richmond only. It states: "In addition to the advisements contained on the plea agreement form, the following advisement applies to the above-referenced case. Please initial each item below and sign this addendum to indicate, under penalty of perjury, that you have read, understand and acknowledge this advisement in its totality." Richmond placed her initials next to four advisements — the same ones the prosecutor recited at the change-of-plea hearing — indicating Richmond's understanding and acknowledgment of them.

III.

*The Notice of Appeal and Certificate of Probable Cause*

Richmond filed a timely notice of appeal and requested a certificate of probable cause on the following grounds. First, the trial court exceeded its authority by requiring Richmond to sign the murder advisement as a condition of the court's indicated sentence. Second, the murder advisement is legally unauthorized, asserts facts contrary to the law on implied malice, and is not based on legislative findings or policy declarations. Third, the Legislature twice rejected a bill that would have required courts to give a similar advisement to the murder advisement. And because the court required the murder advisement as a condition of a guilty plea, "the plea and sentence imposed are illegal."

The trial court initially denied the request for a certificate of probable cause, as well as Richmond's later motion for reconsideration. Eventually, the court issued the certificate, after Richmond petitioned for a writ of mandate and a different panel of this court issued an alternative writ.

7

# DISCUSSION

## I.

## *Court Pleas Versus Negotiated Pleas*

To address Richmond's challenge, we first address the nature of plea before us. The parties describe it as a court plea. Although we agree it is mostly a court plea, we note it also has characteristics of a negotiated plea.

A negotiated plea is "'a contract between the defendant and the prosecutor to which the court consents to be bound.'" (*People v. Segura* (2008) 44 Cal.4th 921, 931.) It is also known as a plea bargain or a conditional plea. (*People v. Hoffard* (1995) 10 Cal.4th 1170, 1181.) The defendant pleads guilty in exchange for "a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he [or she] were convicted of all offenses charged." (*People v. Orin* (1975) 13 Cal.3d 937, 942 (*Orin*).) And "'a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain.'" (*Segura*, at p. 931.)

A court plea "is one under which the defendant is not offered any promises." (*People v. Cuevas* (2008) 44 Cal.4th 374, 381, fn. 4.) It is also known as an open plea (*ibid.*), an unconditional plea (*ibid.*), or a plea to the sheet (*People v. Marsh* (1984) 36 Cal.3d 134, 140). In a court plea, either "the defendant 'plead[s] unconditionally, admitting all charges and exposing himself [or herself] to the maximum possible sentence if the court later ch[ooses] to impose it'" (*Cuevas*, at p. 381, fn. 4), or the court first gives an "'indicated sentence'" followed by the defendant's plea (*People v. Vessell* (1995) 36 Cal.App.4th 285, 296). "In contrast to plea bargains, no prosecutorial consent is required." (*People v. Allan* (1996) 49 Cal.App.4th 1507, 1516.)

Here, on the one hand, the plea is a court plea because Richmond pleaded guilty to the sheet and there is no direct evidence of the People expressly agreeing to the plea. The record does not show the prosecutor accepted or agreed to Richmond's plea in open court. Nor did the prosecutor sign the plea form.

On the other hand, the plea is akin to a negotiated plea because of the apparent sentence bargaining between the trial court and Richmond, and in light of the prosecutor's participation. Even though the parties agree it was the court that tied the murder advisement to the second sentence, there can be no serious dispute the murder advisement form was drafted by the prosecution, not the court. Indeed, at the change-of-plea hearing, it was the prosecutor who reminded the court of the murder advisement and asked to recite it into the record.

With these considerations in mind, we turn to the People's claim of waiver.

## II.

### *Waiver*

"A defendant may waive the right to appeal as part of a plea bargain where the waiver is knowing, intelligent and voluntary." (*People v. Mumm* (2002) 98 Cal.App.4th 812, 815, citing *People v. Panizzon* (1996) 13 Cal.4th 68, 80.) A general waiver, for example, is where the defendant states, "'I waive my appeal rights' or 'I waive my right to appeal any ruling in this case.'" (*Panizzon*, at p. 85, fn. 11.) A general waiver "ordinarily includes error occurring before but not after the waiver because the defendant could not knowingly and intelligently waive the right to appeal any unforeseen or unknown future error." (*Mumm*, at p. 815.)

An "'unauthorized sentence' . . . constitutes a narrow exception to the general requirement that only those claims properly raised and preserved by the parties are reviewable on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 354.) This narrow exception, however, "is itself subject to an exception: Where the defendants have pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction." (*Hester*, *supra*, 22 Cal.4th at p. 295.)

"Fundamental jurisdiction is, at its core, authority over both the subject matter and the parties. [Citations.] When a court lacks fundamental jurisdiction, its ruling is void." (*People v. Chavez* (2018) 4 Cal.5th 771, 780 (*Chavez*).) In contrast, when a court acts "within the scope of its fundamental jurisdiction" but "fails to act within the manner prescribed by such sources of law, it is said to have taken an ordinary act in excess of jurisdiction. [Citation.] Such 'ordinary' jurisdiction, unlike fundamental jurisdiction, can be conferred by the parties' decisions — such as a decision not to object to any perceived deficiency — and so is subject to defenses like estoppel, waiver, and consent." (*Ibid.*)

Consistent with these two distinct meanings of "jurisdiction" (*Chavez*, *supra*, 4 Cal.5th at p. 780), the rationale behind *Hester's* exception to the exception for unauthorized sentences "is that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process" (*Hester*, *supra*, 22 Cal.4th at p. 295).

*Hester's* exception to the exception applies here. The trial court had fundamental jurisdiction over Richmond and the charges against her. (*Chavez*, *supra*, 4 Cal.5th at p. 780.) Richmond signed a *Tahl* form with a

10

general waiver of her appeal rights and a specific waiver of her right to appeal any legally authorized sentence. She signed in exchange for a specific sentence: She could have chosen a sentence that did not require her to sign the murder advisement, but she opted for the shorter sentence. And she pleaded guilty despite her counsel objecting to the murder advisement, in her presence in open court, and handwriting on the *Tahl* form that he did not join in her plea. Under these facts and because Richmond received the benefit of her plea bargain, we "will not find error" in the inclusion of the murder advisement as a condition to the second sentence choice. (*Hester*, *supra*, 22 Cal.4th at p. 295.)

III.

*Improper Judicial Plea Bargaining*

Even if Richmond had not waived her right to appeal, we would nonetheless conclude she failed to preserve her first contention for appellate review. Richmond contends the murder advisement must be stricken because it is the product of improper judicial plea bargaining. Specifically, she complains the trial court "acted in excess of jurisdiction" by "directly bargaining" with her after she pleaded guilty to the sheet. Richmond, however, did not raise this objection in the trial court.

The plea bargaining process contemplates "the adverse parties to the case — the People represented by the prosecutor on one side, the defendant represented by his counsel on the other — [will reach] an agreement between them[selves]." (*Orin*, *supra*, 13 Cal.3d at p. 943.) The agreement, to be effective, must be approved by the trial court. (*Id.*, at pp. 942–943.) "[T]he court has no authority to substitute itself as the representative of the People in the negotiation process and under the guise of 'plea bargaining' to 'agree' to a disposition of the case *over prosecutorial*

11

*objection.*" (*People v. Clancey* (2013) 56 Cal.4th 562, 570 (*Clancey*) [italics added]; accord, *People v. Superior Court (Jalalipour)* (2015) 232 Cal.App.4th 1199, 1202 [guilty plea and resulting sentence "in the absence of the People's consent . . . constituted an unlawful judicial plea bargain"].)  "Such judicial activity would contravene express statutory provisions requiring the prosecutor's consent to the proposed disposition." (*Orin*, at p. 943, fn. omitted.)

As Richmond acknowledges in the opening brief, none of the cases she cites on improper plea bargaining concerned a *defendant* challenging the plea: It was the *prosecutor* who objected to the plea at trial and challenged the resulting sentence by appeal or petition for a writ of mandate.  (See, e.g., *Clancey, supra,* 56 Cal.4th at p. 570; *People v. Turner* (2004) 34 Cal.4th 406, 411, 416; *Orin, supra,* 13 Cal.3d at pp. 940.)  We agree with Richmond that this singular pattern of prosecutorial objections to judicial plea bargaining, without more, does not mean a defendant is foreclosed from similarly objecting.

But such an objection may nonetheless be deemed waived or forfeited if the party raising it on appeal failed to raise it below.  (*People v. Superior Court (Pipkin)* (1997) 59 Cal.App.4th 1470, 1476, fn. 3 [contention of unlawful plea bargaining deemed waived on appeal because prosecution failed to object at trial].)  Here, the appellate record does not show any objection by Richmond, or any party, on the ground that the court was engaging in plea bargaining.  Because there was no objection, we deem the issue forfeited on appeal.

IV.

*Use of the Murder Advisement in Future Proceedings*

Richmond's second main point is that the murder advisement must be stricken because it cannot be used in future criminal proceedings as proof of implied malice on her part. The People argue, among other things, that this issue is not ripe for adjudication. We agree with the People.

"'California courts will decide only justiciable controversies. [Citations.] The concept of justiciability is a tenet of common law jurisprudence and embodies "[t]he principle that courts will not entertain an action which is not founded on an actual controversy."'" (*Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 722 (*Parkford*).) Ripeness is an aspect of justiciability. "Unripe cases are '[t]hose in which parties seek a judicial declaration on a question of law, though no actual dispute or controversy ever existed between them requiring the declaration for its determination.'" (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573 (*Wilson*).) Because "'judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy'" (*ibid.*), courts will not entertain unripe issues. That is, they will not "issu[e] purely advisory opinions." (*Ibid.*)

Here, Richmond does not allude to any pending criminal proceedings in which the People could attempt to use the murder advisement against her. Absent threat of criminal charges concerning murder or drug sales, there is no actual controversy before us, and any opinion we would issue — untethered to any facts of an alleged crime — would be purely

13

advisory. (*Parkford, supra*, 54 Cal.App.5th at p. 722; *Wilson, supra*, 191 Cal.App.4th at p. 1573.)

Richmond counters the issue is ripe for review because her Fifth Amendment privilege against self-incrimination was violated when she was required to sign the murder waiver as a condition of her plea. We do not agree. "The Fifth Amendment provides, in pertinent part, that no person 'shall be compelled *in any criminal case to be a witness against himself [or herself].*'" (*Maldonado v. Superior Court* (2012) 53 Cal.4th 1112, 1127.) This privilege against self-incrimination "is a fundamental trial right of criminal defendants," and "a constitutional violation occurs only at trial." (*U.S. v. Verdugo-Urquidez* (1990) 494 U.S. 259, 264.) "As both [the California Supreme Court] and the United States Supreme Court have made clear, the Fifth Amendment does not directly prohibit the government from *eliciting* self-incriminating disclosures despite the declarant's invocation of the Fifth Amendment privilege. Absent a valid waiver of Fifth Amendment rights, this constitutional provision simply bars the direct or derivative *use* of such officially compelled disclosures to convict or criminally punish the person from whom they were obtained." (*Maldonado*, at p. 1127.)

In sum, we conclude Richmond has waived her right to challenge the validity of the murder advisement in this appeal. In so concluding, we express no opinion on whether and to what extent the murder advisement can be used against Richmond in the future. That issue is saved for another day — one we hope, for Richmond's sake, never comes.[5]

---

[5]     Because we do not reach the merits of the appeal, we deny Richmond's request for judicial notice of two press releases by the Orange County District Attorney's office announcing its policy to give *Watson*-like advisements to certain offenders.

## DISPOSITION

Richmond's request for judicial notice is denied.  The judgment is affirmed.


DELANEY, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.