[No. G034848. Fourth Dist., Div. Three. Feb. 22, 2006.]

THE PEOPLE, Plaintiff and Appellant, v.
ROGELIO MANON HERRERA, Defendant and Respondent.

1192

COUNSEL

Tony Rackauckas, District Attorney, and Brian N. Gurwitz, Deputy District Attorney, for Plaintiff and Appellant.

Deborah A. Kwast, Public Defender, Thomas Havlena, Chief Deputy Public Defender, Kevin J. Phillips, Assistant Public Defender, and Martin F. Schwarz, Deputy Public Defender, for Defendant and Respondent.

**OPINION**

**IKOLA, J.**—At a preliminary hearing, a magistrate found probable cause to hold Rogelio Manon Herrera to answer for conspiracy to manufacture methamphetamine and other crimes. Herrera successfully moved to dismiss the conspiracy count under Penal Code section 995[1] on the basis there was no evidence of conspiracy other than his own extrajudicial statements. The People appeal the order granting the motion to dismiss, arguing primarily that the corpus delicti rule does not apply to preliminary hearings. Herrera asserts this appeal is moot because he pleaded guilty to two necessarily included offenses, and may not be tried on the conspiracy charge even if we were to agree with the People's argument.

The appeal is not moot. Herrera pleaded guilty to charges that are *not* necessarily included offenses of conspiracy under the so-called elements test, and the accusatory pleading test is not applicable for double jeopardy purposes, or for deciding whether multiple convictions of charged offenses is proper. On the merits, however, the corpus delicti rule continues to apply to preliminary hearings. Applying the corpus delicti rule to the preliminary hearing testimony, we agree with the trial court's analysis, and affirm the order dismissing the conspiracy charge.

## FACTS

A complaint charged Herrera with conspiracy (§ 182, subd. (a)(1)), possession of pseudoephedrine with intent to manufacture methamphetamine (Health & Saf. Code, § 11383, subd. (c)(1)), and petty theft with a prior conviction (§§ 484, 666). The People also alleged a prior prison term sentencing enhancement (§ 667.5, subd. (b)).

At Herrera's preliminary hearing, two members of the Orange County Methamphetamine Laboratory Investigative Task Force testified for the People as follows: Pseudoephedrine or ephedrine, found in cold and allergy medications, is a necessary ingredient in producing methamphetamine. Other necessary chemicals include hydriodic acid, usually obtained from a "chemical broker" in a "black market type operation." In July of 2004, at a Target store, Herrera shoplifted pseudoephedrine—he removed blister packs from several boxes of cold and allergy medicine, put the blister packs in his pocket, and discarded the empty boxes on various shelves. Although he purchased other items at the checkstand, he did not buy the cold and allergy tablets. Additional blister packs were found in Herrera's car, bringing the

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

total number of pills to 456, enough to make between three-quarters of an ounce to one ounce of methamphetamine.

After the detective read Herrera his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602], Herrera stated he took the pills to sell them to an individual named Borazo, who had agreed to pay Herrera $200 for 1,000 pseudoephedrine pills. Herrera knew the pills were used to produce crystal methamphetamine, which he understood was "some sort of drug." A search of Herrera's residence did not uncover any equipment "that appeared to be used for the purpose of converting pseudoephedrine into methamphetamine."

The magistrate held Herrera to answer as charged in the complaint. The ensuing information mirrored the complaint and charged Herrera in count 1 with conspiracy to commit the crime of manufacturing a controlled substance, in count 2 with possession with intent to manufacture, in count 3 with petty theft with a prior conviction, and with a prior prison term as a sentencing enhancement.

Herrera invoked the corpus delicti rule and moved to dismiss the conspiracy charge (count 1) pursuant to section 995. Herrera argued that conspiracy under section 182, subdivision (a)(1) requires at least two people conspiring to commit a crime, and, absent his own statements about Borazo, there was no evidence of a coconspirator.[2]

The People opposed the motion, contending "the circumstantial evidence elicited at the preliminary hearing (aside from [Herrera's] admissions) supports an inference that he conspired with at least one other person to manufacture methamphetamine." Specifically, the People argued: "[T]he conversion process that takes place[] in a clandestine methamphetamine laboratory involves specialized equipment and numerous chemical agents, at least one of which (hydriodic acid) is usually obtained on the black market. But during the search of [Herrera's] residence following his arrest at Target, officers found no indicia that [he] was involved in the methamphetamine manufacturing business. This supports an inference that [Herrera] was a middleman, obtaining the [pseudoephedrine] for one or more other individuals."

---

[2] Herrera alternatively argued that supplying goods to a person, without a specific intent to commit the charged crime of producing methamphetamine, "does not give rise to a conspiracy."

At the outset of the section 995 hearing, the court tentatively opined the corpus delicti rule applies only to trial convictions, not to probable cause determinations. But because the People acknowledged current law bound the court to accept the rule's applicability to a preliminary hearing, the court granted Herrera's section 995 motion and dismissed count 1, finding no inference from the record "to support . . . conspiracy absent [Herrera's] statements." The court further found that had the corpus delicti rule not been applied, "there [was] ample and sufficient evidence to deny [Herrera's] motion."

The People filed a notice of appeal from the court's order granting Herrera's section 995 motion and moved for a stay of trial on count 2 (possession with intent to manufacture) pending the appeal (Code Civ. Proc., § 916, subd. (a)). The court ruled it did not have "jurisdiction to stay the proceedings on count 2" and therefore denied the People's motion.

Herrera subsequently pleaded guilty to counts 2 and 3 and was sentenced to the low term of two years in state prison for possession of pseudoephedrine with intent to manufacture methamphetamine, and to a concurrent middle term of two years in state prison for petty theft with a prior. The prison prior enhancement was stricken for purposes of sentencing.

## DISCUSSION

*The Appeal Is Not Moot*

 Herrera argues this appeal is moot because he pleaded guilty to count 2 (possession of pseudoephedrine with intent to manufacture methamphetamine) and count 3 (petty theft with a prior conviction)—crimes he contends are lesser included offenses of count 1 (conspiracy). He contends a trial on the conspiracy charge is barred by section 1023, which "implements the protections of the state constitutional prohibition against double jeopardy, and, more specifically, the doctrine of included offenses." (*People v. Fields* (1996) 13 Cal.4th 289, 305–306 [52 Cal.Rptr.2d 282, 914 P.2d 832] (*Fields*).) "Underlying this principle—that a conviction of a lesser included offense is a bar to a subsequent prosecution for the greater offense—is the notion that, once a conviction on the lesser offense has been obtained, ' "to [later] convict of the greater would be to convict twice of the lesser." ' " (*Id.* at p. 306.)

 The People argue the appeal is not moot because, in opposition to their motion to stay trial pending appeal, Herrera argued that a trial on counts 2 and 3 would "in no way impact[] the appeal itself . . . ." The People assert

defendant's assurances, given to the trial court, that proceeding to trial on counts 2 and 3 would not moot the appeal, authorizes this court to decide the court's order dismissing count 1. We disagree with that rationale. Herrera's "assurances" to the trial court do not compel us to decide a moot appeal. "A court may decide a moot case under recognized exceptional situations, but the court acts as a matter of judicial discretion, and not through any compulsion or direction by the parties." (*Cramer v. Gillermina R.* (1981) 125 Cal.App.3d 380, 385, fn. 4 [178 Cal.Rptr. 69].) Accordingly, we examine whether Herrera's guilty plea to counts 2 and 3 renders moot the People's appeal from the dismissal of count 1.

■ "An action that involves only abstract or academic questions of law cannot be maintained. [Citation.] And an action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 642, p. 669.) Herrera asserts reversing the order dismissing count 1 would be without practical effect because under section 1023 his convictions on the lesser included offenses alleged in counts 2 and 3 bar a subsequent prosecution on count 1. (See *Fields, supra,* 13 Cal.4th 289, 306.) Herrera's argument is premised, of course, on counts 2 and 3 being lesser included offenses of count 1, a question to which we now turn.

■ "To determine whether a lesser offense is necessarily included in the charged offense, one of two tests (called the 'elements' test and the 'accusatory pleading' test) must be met. The elements test is satisfied when ' "all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense." ' " (*People v. Lopez* (1998) 19 Cal.4th 282, 288 [79 Cal.Rptr.2d 195, 965 P.2d 713].) "Under the accusatory pleading test, a lesser offense is included within the greater charged offense ' "if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed." ' " (*Id.* at pp. 288–289.)

■ Herrera concedes that possession of pseudoephedrine with intent to manufacture methamphetamine and petty theft with a prior conviction are not necessarily included offenses of conspiracy under the elements test. (See, e.g., *People v. Campbell* (1955) 132 Cal.App.2d 262, 268 [281 P.2d 912] ["conspiracy is a distinct offense from the actual commission of the offense forming the object of the conspiracy and . . . guilty parties may be legally convicted of both offenses"].) He nevertheless contends the overt acts alleged

in the conspiracy count described the conduct charged separately in counts 2 and 3, thereby rendering the latter counts necessarily included offenses of count 1 under the accusatory pleading test. But a significant body of authority in the California Courts of Appeal holds the accusatory pleading test is not the proper test to apply in the context of deciding whether double jeopardy applies or whether multiple convictions are proper. (See *People v. Scott* (2000) 83 Cal.App.4th 784, 796 [100 Cal.Rptr.2d 70] ["the accusatory pleading test has nothing to do with double jeopardy principles or section 1023"]; *People v. Miranda* (1994) 21 Cal.App.4th 1464, 1467 [26 Cal.Rptr.2d 610] [for purpose of deciding the propriety of multiple convictions, necessarily included offenses are determined by the elements test]; *People v. Scheidt* (1991) 231 Cal.App.3d 162, 165–166 [282 Cal.Rptr. 228] ["an offense that may be a lesser included offense because of the specific nature of the accusatory pleading" is not subject to the bar against multiple convictions]; contra, *People v. Rush* (1993) 16 Cal.App.4th 20, 23–27 [20 Cal.Rptr.2d 15].)

In *People v. Pearson* (1986) 42 Cal.3d 351 [228 Cal.Rptr. 509, 721 P.2d 595] (*Pearson*), the Supreme Court applied the elements test to determine whether one charged offense was necessarily included in another charged offense for the purpose of deciding whether a multiple conviction was proper. (*Id.* at pp. 354–356.) But the *Pearson* court expressly declined to decide whether the accusatory pleading test could be used for this purpose, because the "information did not include sufficient language to make the convictions . . . necessarily included offenses under even this *expanded test.*" (*Id.* at p. 356, fn. 2, italics added.)

More recently, the Supreme Court again declined to decide whether the accusatory pleading test could be used in the context of multiple convictions because application of the test would not have assisted the defendant. (*People v. Montoya* (2004) 33 Cal.4th 1031, 1035–1036 [16 Cal.Rptr.3d 902, 94 P.3d 1098].) In *Montoya*, Justice Chin wrote a separate concurring opinion, in which Justice Baxter concurred, "to emphasize the force of the argument against applying the accusatory pleading test in deciding whether conviction of two *charged* offenses is proper." (*Id.* at p. 1039.) Justice Chin urged that the accusatory pleading test "makes sense" only in deciding whether defendant "had adequate notice of an uncharged lesser offense so as to permit conviction of that uncharged offense . . . ." But it makes no sense to look to the pleading, rather than just the legal elements, in deciding whether conviction of two charged offenses is proper. Concerns about notice are irrelevant when both offenses are separately charged, so there 'appears little reason' to apply the pleading test to charged offenses." (*Ibid.*)

 We find persuasive the clear weight of authority in the Courts of Appeal: For purposes of analyzing whether section 1023 bars multiple convictions, the "elements test based on statutory comparison of the crimes" is the correct (and only) test to apply when determining whether one crime is a necessarily included offense of another crime. (*People v. Scott, supra,* 83 Cal.App.4th at p. 796.) More generally, the opinion shared by at least two Justices of our Supreme Court, that the accusatory pleading test is never appropriate when the issue is the propriety of multiple convictions on *charged* offenses, is consistent with the Supreme Court's use of the elements test for that purpose in *Pearson.* Thus, for the purpose of determining whether conviction of two charged offenses is proper, we apply the elements test to determine whether one offense is necessarily included in the other. We agree Herrera is correct in conceding the elements test is not satisfied in this case. Accordingly, although multiple punishment may be prohibited pursuant to section 654 (an issue we do not decide), multiple convictions are not. Therefore, this appeal is not moot, and we address the merits of the People's appeal.

*The Corpus Delicti Rule Applies to Preliminary Hearings*

 The corpus delicti rule requires the prosecution to prove the corpus delicti—i.e., that a crime actually occurred—by evidence other than the defendant's own out-of-court statements. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1164–1165 [119 Cal.Rptr.2d 903, 46 P.3d 372] (*Alvarez*).) "The amount of independent proof of a crime required for this purpose is quite small [and has been] described . . . as 'slight' [citation] or 'minimal.' " (*People v. Jones* (1998) 17 Cal.4th 279, 301 [70 Cal.Rptr.2d 793, 949 P.2d 890].) The rule "reflects the . . . fear that confessions may be the result of either improper police activity or the mental instability of the accused, and the recognition that juries are likely to accept confessions uncritically." (*Jones v. Superior Court* (1979) 96 Cal.App.3d 390, 397 [157 Cal.Rptr. 809].)

Prior to *Alvarez,* the rule had two aspects: (1) an *evidentiary* function barring the admission of a defendant's extrajudicial statements without first introducing independent proof of the corpus delicti, and (2) a *substantive* role imposing a burden upon the People to present corroborating evidence of such out-of-court statements, and requiring a jury instruction prohibiting a conviction based on those statements alone. (*Alvarez, supra,* 27 Cal.4th at pp. 1177–1178.) In *Alvarez,* our Supreme Court considered the effect of Proposition 8 on the rule. Proposition 8 "added section 28(d), entitled Right to Truth-in-Evidence, to article I of the California Constitution" declaring that with certain exceptions, " '*relevant evidence shall not be excluded in any*

*criminal proceeding.*' " (*Id.* at pp. 1172–1173.) Because "an incriminatory statement by the accused himself is relevant evidence" (*id.* at p. 1174), the *Alvarez* court held "that section 28(d) *did* abrogate any corpus delicti basis for excluding the defendant's extrajudicial statements from evidence." (*Id.* at p. 1165.) ■ But the court reached the opposite conclusion as to the rule's substantive component, holding that "section 28(d) *did not* abrogate the corpus delicti rule insofar as it provides that every *conviction* must be supported by some proof of the corpus delicti *aside from* or *in addition to* such statements, and that the jury must be so instructed." (*Ibid.*)

Thus, it is clear the substantive aspect of the corpus delicti rule remains viable as to trial *convictions*. But in the wake of *Alvarez*, and what the People characterize as "modern limitations to the scope of preliminary hearings," we are asked to be the first court to hold the rule inapplicable to probable cause determinations at preliminary examinations. The People note our Supreme Court has never addressed this issue. In *People v. Jones, supra,* 17 Cal.4th 279, the Supreme Court concluded the independent evidence presented at the preliminary hearing was sufficient to establish the corpus delicti, and thus did "not address the issue . . . whether article I, section 28, subdivision (d) of the California Constitution abrogated the corpus delicti rule." (*Id.* at p. 304.) *Alvarez*, in turn, reiterated the *Jones* court did not review the question whether "independent proof of the corpus delicti must be presented at the preliminary examination." (*Alvarez, supra,* 27 Cal.4th at p. 1170, fn. 4.) Nor did *Alvarez* itself confront the issue since the defendant there appealed from a conviction. (*Id.* at p. 1165.)

Recently, *Rayyis v. Superior Court* (2005) 133 Cal.App.4th 138 [35 Cal.Rptr.3d 12] (*Rayyis*), directly addressed this issue. There, the trial court denied the defendant's section 995 motion, agreeing with the People that under *Alvarez*, Proposition 8 abrogated the corpus delicti rule except as to "a criminal *conviction*." (*Rayyis*, at p. 144.) The Court of Appeal reviewed Proposition 8, *Alvarez*, and the long judicial history applying the corpus delicti rule to preliminary examinations, and concluded *Alvarez* did *not* abrogate the rule in the preliminary hearing context.[3] (*Rayyis*, at pp. 145–150.) The *Rayyis* court reasoned: (1) Except to make defendant's out-of-court statements admissible without requiring the prosecution to first present independent evidence of the crime, *Alvarez* "made it absolutely clear that the corpus delicti rule was not abrogated in any other respect" (*Rayyis*, at p. 148); (2) "[t]o the extent section 28(d) affected application of the corpus delicti rule at trial, it

---

[3] The *Rayyis* court collected "cases in which appellate courts have granted relief because the requirements of the corpus delicti rule were not met at the preliminary hearing," "decisions affirming orders setting aside an information because the corpus delicti rule had not been satisfied at the preliminary hearing," and "numerous decisions applying the corpus delicti rule to preliminary hearings, only to conclude that the rule had been satisfied." (*Rayyis, supra,* 133 Cal.App.4th at p. 146.)

affected its application at preliminary hearings, no more and no less" (*ibid.*); (3) *Alvarez*'s "occasional reference to a conviction" did not "signal that the court intended to hold the corpus delicti rule no longer applies to preliminary hearings" (*Rayyis,* at p. 149); (4) "[a]pplying the rule to preliminary hearings does not impose an undue burden on the prosecution [since the] amount of additional evidence . . . required . . . is 'slight' or 'minimal' "; and (5) " 'the purpose of a preliminary hearing is, in part, to assure that a person is not detained for a crime that was never committed.' " (*Ibid.*)

The *Rayyis* court was also careful to note, however, the Supreme Court "has not endorsed the numerous decisions . . . applying the rule to [preliminary] hearings." (*Rayyis, supra,* 133 Cal.App.4th at p. 149.) "However, until the Supreme Court decides that the corpus delicti rule should not apply to preliminary hearings, we are not willing to turn our backs on a long and unbroken line of cases that have applied the rule to preliminary hearings." (*Ibid.*)

We find the *Rayyis* reasoning to be persuasive, and we likewise are unwilling to blaze a new trail after the courts have followed a single path for decades. If appropriate, any such change of direction is better left to the Supreme Court. We will nevertheless address the People's specific arguments.

■ The People correctly point out "less evidence is required to support a determination of probable cause for a commitment than a determination of guilt for a conviction." (*People v. McRae* (1947) 31 Cal.2d 184, 187 [187 P.2d 741], disapproved on another point in *People v. Tobias* (2001) 25 Cal.4th 327, 337 [106 Cal.Rptr.2d 80, 21 P.3d 758].) Even so, binding a defendant over for trial is not a perfunctory exercise. Preliminary hearings serve important purposes. They " 'weed out groundless . . . charges of grave offenses' " and " 'relieve the accused of the degradation and expense of a criminal trial.' " (*People v. Superior Court (Mendella)* (1983) 33 Cal.3d 754, 759 [191 Cal.Rptr. 1, 661 P.2d 1081], disapproved on another point in *In re Jovan B.* (1993) 6 Cal.4th 801, 814, fn. 8 [25 Cal. Rptr. 2d 428, 863 P.2d 673].) Preliminary examinations " 'operate as a judicial check on the exercise of prosecutorial discretion' " and help ensure " 'that the defendant [is] not . . . charged excessively' " (*id.* at p. 759), which can confer a " 'tactical advantage . . . upon the prosecutor in respect to plea bargaining.' " (*Id.* at p. 760.) These serious purposes support requiring independent proof of the corpus delicti at preliminary hearings.

But, the People argue, in addition to the lesser *quantum* of evidence required for probable cause determinations, more *types* of evidence are admissible at preliminary examinations than at trial. Hearsay statements have been admissible at preliminary hearings since the 1990 adoption of Proposition 115, which amended the Penal Code "to provide that a probable cause determination at a preliminary examination may be based on out-of-court declarants' hearsay statements related by a police officer with certain qualifications and experience." (*People v. Miranda* (2000) 23 Cal.4th 340, 347–348 [96 Cal.Rptr.2d 758, 1 P.3d 73] (*Miranda*).) Additionally, "the 1990 measure [gave] magistrates discretion to limit defendants' right to call witnesses on their behalf" and precluded preliminary examinations from being " 'used for purposes of discovery.' " (*Id.* at p. 348.) The result was a " 'new, limited form of preliminary hearing in this state.' " (*Id.* at p. 349.)

While the scope of modern preliminary hearings has been circumscribed, and the evidentiary rules relaxed, nothing in Proposition 115 suggests the substantive aspect of the corpus delicti rule no longer applies to probable cause determinations. The People rely on *Miranda*, *supra*, 23 Cal.4th 340, where our Supreme Court held the hearsay confession of a nontestifying accomplice was admissible against the defendant at a joint preliminary hearing, so long as a qualified officer testified to the hearsay, even though the admission of such confessions at trial would have violated the *Aranda/Bruton* rule (*Bruton v. United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620]; *People v. Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265]) and defendant's confrontation rights under *Lilly v. Virginia* (1999) 527 U.S. 116 [144 L.Ed.2d 117, 119 S.Ct. 1887]. But *Miranda* concerned only the admissibility of hearsay accomplice statements at a preliminary hearing.[4] The corpus delicti rule was not an issue; that a crime had in fact been committed was established by a wealth of evidence, not including extrajudicial statements of the defendant or his accomplice.

The People also rely on *People v. Monette* (1994) 25 Cal.App.4th 1572 [31 Cal.Rptr.2d 203] (*Monette*). In *Monette*, this court held the corpus delicti rule inapplicable to probation revocation hearings. By (flawed) analogy, the People argue that since probation revocation hearings and preliminary hearings both enjoy relaxed evidentiary rules, the corpus delicti rule should likewise be inapplicable to both types of proceedings. But the issue at a probation revocation hearing is whether probation has failed " 'as a rehabilitative device,

---

[4] We note the Supreme Court had earlier held that section 1111 does not prohibit commitments by a magistrate based solely on the uncorroborated *testimony* of an accomplice. (*People v. McRae*, *supra*, 31 Cal.2d 184, 187.) Section 1111, by its terms applies to *convictions*; the corpus delicti rule was not mentioned in the *McRae* opinion.

as evidenced by the probationer's failure to abide by the *probation conditions*.' " (*Id.* at p. 1575, italics added.) A defendant on probation has already been convicted at a trial to which the corpus delicti rule applied, and if convicted of a felony, has been held to answer at a preliminary hearing, or indicted by a grand jury, proceedings in which the corpus delicti rule also applied.[5] Thus, at a probation revocation hearing, unlike a preliminary hearing, there is no longer any open issue as to whether any crime at all occurred. There is simply no reason to apply the rule.[6]

Finally, the People point us to contrary decisions of two sister states. (See *State v. Jones* (Ariz. Ct. App. 2000) 198 Ariz. 18 [6 P.3d 323] [corpus delicti rule not applicable at preliminary hearing]; *State ex rel. Peterson v. Ward* (Okla. Crim. App. 1985) 1985 OKCR 134 [707 P.2d 1217] [corpus delicti rule not applicable at preliminary hearing, but court should hold in camera hearing before trial to determine whether prosecution can establish corpus delicti by independent evidence, and, if not, to sustain demurrer and delete references to that crime from defendant's extrajudicial statements so as not to prejudice defendant on trial of other charges].) But with the rule so firmly embedded in California law, we find wholly unpersuasive a contrary rule of law adopted by a sister state.

In *Alvarez*, our Supreme Court did not address the broader question of whether the corpus delicti rule in general continues to be useful: "We stress the narrow nature of our proposed holding. The matter before us is limited to the direct effect of *Proposition 8* on the California rule requiring independent proof of the corpus delicti. We do not otherwise consider the parameters of the independent-proof rule, for such broader issues are not presented. We are aware of various policy criticisms of the rule (see, e.g., [law review citations]; but see *People v. Jones, supra,* 17 Cal.4th at pp. 321–325 (conc. opn. of Mosk, J.)), but we express no view on that subject, for it is beyond the scope of the questions framed by this appeal." (*Alvarez, supra,* 27 Cal.4th at p. 1182, fn. 18.) As noted, *ante,* given California's lengthy experience with the corpus delicti rule, we believe the "broader issues" should be decided in the first instance by our Supreme Court, should they decide it appropriate to do so.

*There Was Insufficient Evidence of Conspiracy*

▓▓▓ The People argue the "circumstantial evidence elicited at [Herrera's] preliminary hearing (aside from his admissions) supports an inference that he

---

[5] Although not at issue in this case, the corpus delicti rule also applies in grand jury proceedings. (See, e.g., *Simmonds v. Superior Court* (1966) 245 Cal.App.2d 704 [54 Cal.Rptr. 195].)

[6] Of course, if the conduct that constituted the violation of a probation condition also constituted a separate crime, the corpus delicti rule would apply in a prosecution for that separate crime.

conspired with at least one other person to manufacture methamphetamine." It is true the additional evidence need only be "slight"; "[t]he independent proof may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible." (*Alvarez, supra,* 27 Cal.4th at p. 1171.) "The inference need not be 'the only, or even the most compelling, one . . . [but need only be] a *reasonable* one . . . .' " (*People v. Jones, supra,* 17 Cal.4th at pp. 301–302.) In light of the foregoing, the People assert the nonexistence of a methamphetamine laboratory in Herrera's home, together with the large quantity of pseudoephedrine pills he gathered, support an inference he was a middleman in a conspiracy to produce methamphetamine.

Although the trial court found insufficient evidence of a conspiracy (absent Herrera's out-of-court statements), "in proceedings under section 995 it is the magistrate who is the finder of fact; the superior court has none of the foregoing powers, and sits merely as a reviewing court; it must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate. [Citation.] On review by appeal . . . the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate holding the defendant to answer." (*People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278].)

The magistrate found sufficient evidence of a conspiracy. It is unclear, however, whether the magistrate's finding was based solely on Herrera's extrajudicial statements; Herrera did not raise the corpus delicti rule at the preliminary hearing. Although "it is the 'general rule' that the magistrate 'is presumed to have applied the law correctly in the absence of a clear indication to the contrary' " (*People v. Konow* (2004) 32 Cal.4th 995, 1026, fn. 11 [12 Cal.Rptr.3d 301, 88 P.3d 36]), we find no evidence of a conspiracy other than Herrera's own statements. The People provide no support for their assertion that the absence of any indicia of a methamphetamine laboratory in Herrera's home can serve as positive evidence he was a middleman. " ' " 'A legal inference cannot flow from the nonexistence of a fact; it can be drawn only from a fact actually established. (Citation.) It is axiomatic that "an inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture or guesswork." ' " ' " (*People v. Stein* (1979) 94 Cal.App.3d 235, 239 [156 Cal.Rptr. 299].)

██ The People rely on *Salazar v. Superior Court* (2000) 83 Cal.App.4th 840, 842 [100 Cal.Rptr.2d 120], where the Court of Appeal stated an " 'information should be set aside only when there is a total absence of evidence to support a necessary element of the offense charged.' " That test is met here. Absent Herrera's own statements, there is a total absence of evidence demonstrating the existence of a conspiracy to manufacture methamphetamine.

## DISPOSITION

The order is affirmed.

Rylaarsdam, Acting P. J., and Moore, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 14, 2006, S142322.