Filed 4/29/15  P. v. Lewis CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>THOMAS LEE LEWIS, SR.,<br><br>     Defendant and Appellant. | C076108<br><br>(Super. Ct. No. CM038184) |

After a trial to the court, defendant Thomas Lee Lewis challenges the trial court finding him guilty of committing a lewd act on a child under 14.  Defendant claims admission of the victim's out-of-court statements violated his rights under the Sixth Amendment's confrontation clause, and the erroneous admission of those statements prejudiced him in two ways.  He first contends that without the victim's statements in evidence, his out-of-court inculpatory statements should not have been admitted because the evidence offered by the prosecution was otherwise insufficient to establish the required corpus delicti.  He then contends that even if his inculpatory statements were

1

admissible, his conviction was improper because those statements, without an established corpus delicti, were an insufficient basis for his conviction. Because we conclude that defendant's inculpatory statements were properly admitted into evidence and that the record contains sufficient independent evidence to establish the corpus delicti of the crime charged even without the victim's statements, we find no prejudicial error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2013, the then three-year-old J. R. stopped attending Grandma Linda's Day Care where she had been going five days a week for a year and one-half. The adults generally present at the day care were defendant, his wife Linda, and his mother-in-law. J. R. stopped attending Grandma Linda's Day Care because, according to her mother, Pearl, J. R. came home one day and told Pearl that she had been "touched [i]nappropriately" and that "something bad had happened to her at Grandma Linda's." Pearl went to the Valley Oaks licensing department the next day and made a complaint.

Shortly thereafter, Butte County Sheriff's Detective Christopher D'Amato became involved with the investigation. Detective D'Amato contacted Pearl to arrange a forensic interview of J. R. A forensic interview is a nonconfrontational interview of an alleged child victim conducted by a specially trained Department of Children's Services employee. According to Detective D'Amato, the "prime focus" of the interview is to provide information for law enforcement. During the interview, J. R. told the interviewer that defendant had pulled down her underpants, licked her vagina, and told her not to tell anyone. Detective D'Amato and the prosecuting attorney, Stacy Edwards, watched the interview from a separate room. The interviewer took several breaks during which Detective D'Amato and Edwards suggested questions. The recording of the interview was turned over to the Butte County Sheriff's Department.

Detective D'Amato then called defendant and arranged to meet at the Sheriff's Department. Detective D'Amato began the conversation by telling defendant that he was

2

not in trouble, under arrest, or being detained, and that he was free to leave. Defendant denied inappropriately touching J. R. until Detective D'Amato rubbed defendant's mouth with a buccal swab, left the room for approximately one-half hour, and returned, asking defendant to "tell [him] how [defendant's] DNA ended up on [J. R.]" Although defendant initially continued to deny touching J. R. inappropriately, he eventually told Detective D'Amato that "[s]he pulled down her pants and I licked [her vagina] for her. That's what she wanted." He denied any further wrongdoing. At the end of the interview, defendant was placed under arrest. The recording of this conversation was also turned over to the Butte County Sheriff's Department. Defendant was charged with committing a lewd act upon a child. Defendant pled not guilty and waived his right to a jury trial. At the bench trial, J. R. briefly took the witness stand and was found incompetent to testify due to her age. The trial court allowed the prosecutor to play the video of J. R.'s forensic interview over defendant's Sixth Amendment objection. The trial court also allowed the prosecutor to play the video of defendant's interview with Detective D'Amato over defendant's objections that his statements were not a confession as required by Evidence Code section 1228 and that the People had not established the corpus delicti required before defendant's statements could be used as the basis for a conviction. The trial court overruled all of defendant's objections.

The court then found defendant guilty of the crime charged. Defendant was sentenced to six years in prison. This appeal followed.

DISCUSSION

Defendant contends his conviction must be reversed because he was prejudiced by the trial court's admission in evidence of J. R.'s statements from the forensic interview. He alleges that this impacted his trial in two ways, both of which were prejudicial. His first argument is that because J. R.'s statements were inadmissible due to the confrontation clause, his own inculpatory statements were inadmissible because, without J. R.'s statements, the People could not establish the corpus delicti of the crime charged.

3

He claims that this prejudiced him because "[w]ithout the[se] statements . . . , the prosecution could not have proven that [defendant] committed the crime beyond a reasonable doubt." He next argues that, even if his inculpatory statements were *admissible* without an established corpus delicti, "the statements could not form the basis of [his] conviction because[, absent J. R.'s statements,] there was a lack of independent evidence to satisfy the corpus delicti rule," which "prohibits *conviction* where the only evidence that the crime was committed is the defendant's own [out-of-court] statements" (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1180) and, therefore, he was necessarily prejudiced by the admission of J. R.'s statements.

While we conclude that defendant's statements were admissible regardless of whether the corpus delicti was established, we also conclude that the record contains sufficient independent evidence to establish the corpus delicti here. For that reason, we find no prejudicial error and affirm.

I

*Although The Sixth Amendment Precluded The Admission Into Evidence*
*Of J. R.'s Statements, Defendant's Statements Were Nevertheless Admissible*

Evidence Code section 1228 purports to allow courts to admit into evidence the out-of-court statement of an alleged child victim, even though the statement may otherwise be hearsay, "for the purpose of establishing the elements of the crime in order to admit as evidence the confession of a person accused of [committing, among other things, lewd or lascivious acts on a child under 14]." Defendant contends and the People agree that the trial court erred by admitting J. R.'s statements into evidence pursuant to Evidence Code section 1228 because that admission violated his rights under the confrontation clause. Defendant contends that because J. R.'s statements were inadmissible, there is insufficient independent evidence of the corpus delicti and, therefore, his inculpatory statements were inadmissible.

4

We agree with both parties that J. R.'s statements were inadmissible. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." (U.S. Const., 6th Amend.) Through this clause, the Sixth Amendment bars the admission into evidence "of testimonial statements of a witness . . . unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." (*Crawford v. Washington* (2004) 541 U.S. 36, 53-54 [158 L.Ed.2d 177, 194].) "[Statements] are testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (*Davis v. Washington* (2006) 547 U.S. 813, 822 [165 L.Ed.2d 224, 237].) This prohibition applies even where the testimonial statements are said to be admissible under a state law exception to the hearsay rule, (*Crawford*, at pp. 61-62 [158 L.Ed.2d at p. 199]) such as Evidence Code section 1228. Because J. R.'s statements were testimonial and defendant did not have a prior opportunity for cross-examination, admission of those statements violated *Crawford*.

But it does not follow that just because J. R.'s statements were inadmissible, so were defendant's. It was once true that "defendant's extrajudicial statements [would] have been deemed *inadmissible* over a corpus delicti objection absent some independent evidence of the crime to which the statements relate . . . ." (*People v. Alvarez, supra*, 27 Cal.4th at p. 1170.) "Because[, however,] of the adoption of [the right to truth-in-evidence rule, which states that relevant evidence shall not be excluded in any criminal proceeding (Cal. Const., art. I, § 28, subd. (f)(2))], there no longer exists a trial objection to the *admission in evidence* of the defendant's out-of-court statements on grounds that independent proof of the corpus delicti is lacking." (*Alvarez*, at p. 1180.) For this reason, even if the People had failed to establish the corpus delicti because J. R.'s statements should not have been admitted, defendant's objection to the admission in evidence of his inculpatory statements was without merit. *His* statements were admissible in any event.

5

II

*The Corpus Delicti Has Been Satisfactorily Established*

"[T]he corpus delicti of a crime is (1) the fact of the . . . harm, and (2) the existence of a *criminal agency* as its cause."  (*People v. Dorsey* (1974) 43 Cal.App.3d 953, 961.)  These elements may be established by "circumstantial evidence" and by only "[a] slight or prima facie showing, permitting the reasonable inference that a crime was committed . . . ."  (*People v. Alcala* (1984) 36 Cal.3d 604, 624-625, superseded by statute on other grounds, as stated in *People v. Falsetta* (1999) 21 Cal.4th 903, 911.)

Defendant points to two cases to support his argument that there was no sufficient evidence to satisfy the corpus delicti rule except J. R.'s inadmissible statements.  The first is *People v. Herrera* (2006) 136 Cal.App.4th 1191.  In *Herrera*, the defendant was arrested for stealing a large amount of pseudoephedrine pills and charged with conspiracy to manufacture methamphetamine.  (*Id.* at pp. 1195-1196.)  The defendant admitted to the investigating detective that he sold the pills to someone who used them to make methamphetamine.  (*Id.* at p. 1196.)  No methamphetamine producing equipment was found in the defendant's home.  (*Ibid.*)  The defendant appealed the trial court's decision to deny his motion to dismiss the conspiracy charge arguing that, absent his own statement about his coconspirator, there was insufficient independent evidence to establish the corpus delicti of a conspiracy charge.  (*Id.* at pp. 1196-1197.)  In response, the People argued that the large quantity of pills combined with the nonexistence of a methamphetamine lab in the defendant's residence " 'support[ed] an inference that [the defendant] conspired with at least one other person to manufacture methamphetamine.' "

(*Id*. at pp. 1204-1205.)  The Third Division of the Fourth District rejected the People's argument and granted the motion to dismiss because " ' " ' " [a] legal inference cannot flow from the nonexistence of a fact; it can be drawn only from a fact actually

6

established." ' " ' " (*Id.* at p. 1205.)  Because the People were therefore unable to rely on the nonexistence of a methamphetamine lab, there was *absolutely no evidence* other than the defendant's own out-of-court statements that he was engaged in a conspiracy.  This case is no help to defendant because the record contains independent evidence establishing corpus delicti of the crime.

Similarly, in *People v. Powers-Monachello* (2010) 189 Cal.App.4th 400, the second case defendant cites, the reviewing court found a *complete lack of evidence*, other than the defendants' out-of-court statements, to support a reasonable inference that a conspiracy existed.  The People offered a list of ten " 'overt acts' " that they claimed established the corpus delicti of conspiratorial intent.  (*Id.* at pp. 410-411.)  The Second Division of the First District disagreed, concluding that while "[t]he permissible evidence . . . show[ed] an association between the defendants, [it showed] no agreement to do more than store a safe . . . .  [T]his record contain[ed] no evidence of any overt act . . . in furtherance of a common [criminal] purpose. . . ." (*Id.* at p. 418.)  " ' "Mere association does not make a conspiracy." ' [Citation.]  [S]imply knowing that a person's products or services are being used for a criminal purpose is insufficient." (*Id.* at p. 419.)  Like *Herrera*, *Powers-Monachello* features a complete lack of independent evidence to support a conspiracy charge.  In both cases, the courts found nothing in the record, absent the defendants' out-of-court statements, to establish the corpus delicti of the crime.

Here, even without J. R.'s statements, the record still contains enough evidence to establish the corpus delicti of the crime charged.  J. R.'s mother testified to several facts that, taken together, are sufficient to make the "slight . . . showing" needed.  (*People v. Alcala*, *supra*, 36 Cal.3d at p. 624.)  She testified that J. R. had attended Grandma Linda's Day Care and that defendant lived there.  She went on to say, without objection, that J. R. no longer attended day care there because J. R. came to her and told her that she had been "touched [i]nappropriately"  and that "something bad had happened to her at Grandma Linda's."  This testimony is sufficient to "permit[ a] reasonable inference" (*id.* at pp. 624-

7

625) that J. R. was harmed and that this harm was due to a criminal agency (*People v. Dorsey*, *supra*, 43 Cal.App.3d at p. 961).  Therefore, the corpus delicti was established and defendant's inculpatory statements were properly considered "to strengthen the case on all issues."  (*People v. Alvarez*, *supra*, 27 Cal.4th at p. 1181.)

III

*The Trial Court's Error In Admitting J. R.'s Statements Was Harmless*

Defendant is correct that where "there [i]s a lack of independent evidence to satisfy the corpus delicti rule," a defendant's incriminating statements "[cannot] form the basis of [a] conviction."  The right to truth-in-evidence rule, discussed above, "did not eliminate the independent-proof rule insofar as [it] prohibits *conviction* where the only evidence that the crime was committed is the defendant's own statements outside of court."  (*People v. Alvarez*, *supra*, 27 Cal.4th at p. 1180.)

Defendant contends that because the "erroneous admission of [J. R.'s] statement[s] . . . violated [his] rights under the federal Constitution . . . , the standard of prejudice in *Chapman v. California* (1967) 386 U.S. 18, 24, applies."  We agree.  "Confrontation clause violations are subject to federal harmless-error analysis under *Chapman* . . . [which] asks:  'Is it clear beyond a reasonable doubt that a rational [finder of fact] would have found the defendant guilty absent the error?' "  (*People v. Geier* (2007) 41 Cal.4th 555, 608, overruled on another ground in *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305 [174 L.Ed.2d 314].)  Defendant argues that the People cannot show harmlessness here because, absent the erroneous admission of J. R.'s statements, the corpus delicti has not been proven.  However, because we have concluded the corpus delicti requirement was satisfied even without considering J. R.'s statements, their admission was harmless beyond a reasonable doubt.

DISPOSITION

The judgment is affirmed.

                                     ROBIE             , Acting P. J.


We concur:


          BUTZ           , J.


          HOCH           , J.

9