Filed 4/16/24

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ADAM DANIEL BAROOSHIAN,<br><br>    Defendant and Appellant. | D081050<br><br><br><br>(Super. Ct. No. SCN395003) |

APPEAL from a judgment of the Superior Court of San Diego County, Brad A. Weinreb, Judge. Affirmed.

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier, and Maxine Hart, Deputy Attorneys General, for Plaintiff and Respondent.

In this case, we are asked to consider whether double jeopardy principles have been violated in the second trial of Adam Daniel Barooshian wherein the jury convicted him of murder (Pen. Code, § 187, subd. (a)) under

a *Watson* murder theory.[1] In Barooshian's first trial, the jury did not reach a verdict on a murder charge. However, the jury did convict Barooshian of gross vehicular manslaughter while intoxicated (Pen. Code,[2] § 191.5, subd. (a); Veh. Code, §§ 23140, 23152, 23153) among other offenses.

Here, Barooshian argues that his second trial violated double jeopardy principles because gross vehicular manslaughter while intoxicated should be considered a necessarily included (or lesser included) offense of a *Watson* murder. However, " '[u]nder California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154, fn. 5.) Barooshian does not argue that the accusatory pleading test applies in the instant matter. And our high court has determined that gross vehicular manslaughter while intoxicated is not a lesser included offense of murder. (See *People v. Sanchez* (2001) 24 Cal.4th 983, 987, 990–992 (*Sanchez*).) Moreover, Barooshian has not persuaded us that we should create a new test to apply to his second trial here. Accordingly, we affirm the judgment.

---

[1] In *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*), our high court concluded that a person who kills another while driving under the influence of alcohol may be charged with second degree murder if the circumstances support a finding of implied malice. (*Id.* at pp. 294, 298–299.) This is "informally known as a *Watson* murder." (*People v. Wolfe* (2018) 20 Cal.App.5th 673, 677 (*Wolfe*).)

[2] Statutory references are to the Penal Code unless otherwise specified.

## FACTUAL AND PROCEDURAL BACKGROUND

The specific facts of Barooshian's offenses are not necessary to resolve the issues before us. Suffice it to say, in the early morning hours of January 1, 2019, Barooshian drove his vehicle while heavily intoxicated and ultimately collided with a motorcycle, killing its rider. As such, in an amended information filed in March 2020, the San Diego County District Attorney charged Barooshian with murder (§ 187, subd. (a); count 1); gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a); count 2); driving under the influence (DUI) causing injury (Veh. Code, § 23153, subd. (a); count 3); driving with a measurable blood alcohol level causing injury (Veh. Code, § 23153, subd. (b)); count 4); and driving with a license suspended for a prior DUI conviction (Veh. Code, § 14601.2, subd (a); count 5). As to count 2, the prosecution alleged that Barooshian personally inflicted great bodily injury upon the victim (§ 1192.7, subd. (c)(8)). Regarding counts 3 and 4, the prosecution further alleged that Barooshian had a prior DUI conviction within 10 years (Veh. Code, §§ 23626, 23540), that he personally inflicted great bodily injury on the victim (§§ 12022.7, subd. (a), 1192.7, subd. (c)(8)), and that Barooshian had a blood alcohol concentration of .15 or more (Veh. Code, § 23578).

Barooshian pled guilty to count 5 and admitted the prior DUI conviction alleged in counts 3 and 4. The matter proceeded to trial and the jury convicted Barooshian on counts 2 through 4 and found true the corresponding allegations. However, the jury was unable to reach a verdict on count 1, and the trial court declared a mistrial.

The prosecution elected to retry Barooshian on the murder offense. The jury convicted Barooshian of second degree murder.

At sentencing, the court found two aggravating factors had been proven beyond a reasonable doubt: Barooshian was on probation at the time of the offense and his previous performance on probation was unsatisfactory. The court sentenced Barooshian to prison for 15 years to life on count 1. Under section 654, the court stayed Barooshian's 10-year sentence on count 2 and dismissed the remaining counts and allegations in the interest of justice or because they were lesser included offenses.[3]

Barooshian timely filed a notice of appeal.

DISCUSSION

Double jeopardy protections are enshrined in both the United States and California Constitutions. The Fifth Amendment to the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." (*People v. Fields* (1996) 13 Cal.4th 289, 297 (*Fields*) [explaining this clause was made applicable to the states through the Fourteenth Amendment].) Article I, section 15 of the California Constitution provides that "[p]ersons may not twice be put in jeopardy for the same offense."

Section 1023 "implements the protections of the state constitutional prohibition against double jeopardy. . . ." (*Fields*, *supra*, 13 Cal.4th at p. 305.) It provides:

> "When the defendant is convicted or acquitted or has been once placed in jeopardy upon an accusatory pleading, the conviction, acquittal, or jeopardy is a bar to another prosecution for the offense charged in such accusatory pleading, or for an attempt to commit the same, or for an

---

3    The minute order states that the court found counts 3 and 4 were lesser included offenses of count 1. Yet, at the sentencing hearing, the court did not note which count it found to be the greater offense.

4

offense necessarily included therein, of which he might have been convicted under that accusatory pleading." (§ 1023.)

Courts have interpreted section 1023 to bar subsequent prosecution for a greater offense after conviction of a lesser included offense, even if the jury deadlocked on the greater offense in the first trial. (*Fields*, *supra*, 13 Cal.4th at p. 307.) This rule is premised on the concept that "once a conviction on the lesser offense has been obtained, ' "to [later] convict of the greater would be to convict twice of the lesser." ' " (*Id.* at p. 306.) However, section 1023 is typically inapplicable where the lesser offense is not a necessarily included offense. (See *People v. Scott* (2000) 83 Cal.App.4th 784, 796–797 (*Scott*).)

Generally, " '[t]o determine whether a lesser offense is necessarily included in the charged offense, one of two tests (called the "elements" test and the "accusatory pleading" test) must be met. The elements test is satisfied when " 'all the legal ingredients of the corpus delicti of the lesser offense [are] included in the elements of the greater offense.' " [Citation.] 'Under the accusatory pleading test, a lesser offense is included within the greater charged offense " 'if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed.' " ' " (*People v. Herrera* (2006) 136 Cal.App.4th 1191, 1198 (*Herrera*), quoting *People v. Lopez* (1998) 19 Cal.4th 282, 288–289.)

Barooshian does not argue that the accusatory pleading test is applicable to the instant action.[4] Nor could he. The prosecution separately charged Barooshian with both second degree murder and gross vehicular

---

4    Barooshian forfeited his double jeopardy challenge by failing to raise it below. (See *People v. Scott* (1997) 15 Cal.4th 1188, 1201.) To avoid a claim of ineffective assistance of counsel, we shall address the matter on the merits.

manslaughter while intoxicated. "The accusatory pleading test arose to ensure that defendants receive notice before they can be convicted of an uncharged crime." (*People v. Reed* (2006) 38 Cal.4th 1224, 1229.) Indeed, we made clear that "the accusatory pleading test has nothing to do with double jeopardy principles or section 1023, each of which applies when 'a given crime, by definition, *necessarily and at all times* is included within another one.'" (*Scott, supra*, 83 Cal.App.4th at p. 796.) Moreover, we also have rejected a so-called "expanded" accusatory pleading test that would look beyond the face of the pleading to the evidence presented at the preliminary hearing. (See *People v. Alvarez* (2019) 32 Cal.App.5th 781, 787–790.)

In addition, the elements test does not support Barooshian's arguments here. He rightly concedes that *Sanchez, supra*, 24 Cal.4th at page 988 forecloses any argument that gross vehicular manslaughter while intoxicated is a lesser included offense of murder under the elements test. In *Sanchez*, the defendant was charged with second degree murder and gross vehicular manslaughter while intoxicated and was convicted of both offenses. (*Id.* at p. 986.) Our high court affirmed both convictions, holding that gross vehicular manslaughter while intoxicated was not a necessarily included offense of murder because each offense requires proof of statutory elements that the other does not. (*Id.* at pp. 988–989.)

Barooshian maintains *Sanchez* is limited to the context of multiple convictions in a single prosecution but not a subsequent prosecution. However, this argument cannot withstand the California Supreme Court's holding in *People v. Hicks* (2017) 4 Cal.5th 203 (*Hicks*). There, the court made clear that the elements test also governs necessarily included offenses in circumstances analogous to the instant matter, explaining why

6

section 1023 did not bar the defendant's subsequent murder prosecution after he was convicted of gross vehicular manslaughter:

> "[R]etrial of the murder charge was permitted because the first jury, unable to agree as to the murder charge, convicted defendant of *lesser related* offenses, but it did not convict him of any *necessarily included* offenses. Of these lesser related offenses, the one that was factually closest to the murder charge was gross vehicular manslaughter while intoxicated, but because defendant's gross vehicular manslaughter conviction required proof of elements that did not need to be proved to convict defendant of murder, the retrial of the murder charge did not constitute a second trial of the gross vehicular manslaughter charge, and the conviction on the murder charge did not constitute a second gross vehicular manslaughter conviction." (*Hicks, supra,* 4 Cal.5th at p. 209, footnote omitted.)

Moreover, California appellate courts that have considered the issue are in agreement that the elements test applies to double jeopardy claims and claims under section 1023, which implements statutory double jeopardy protections. (See, e.g., *Scott, supra,* 83 Cal.App.4th at pp. 794–797 [elements test applies in the context of double jeopardy and section 1023]; *People v. Spicer* (2015) 235 Cal.App.4th 1359, 1371–1372; *Aslam v. Superior Court* (2019) 41 Cal.App.5th 1029, 1034.)

In *Herrera,* the prosecution appealed an order granting the defendant's motion to dismiss a conspiracy count under section 995. (*Herrera, supra,* 136 Cal.App.4th at pp. 1196–1197.) Meanwhile, the defendant pled guilty to two other charges, which he then argued were lesser included offenses of the conspiracy charge and therefore rendered the prosecution's appeal moot because the guilty pleas barred further prosecution of the conspiracy charge. (*Id.* at p. 1197.) The defendant conceded that the lesser counts were not necessarily included under the elements test, but urged the court to apply the accusatory pleading test. (*Id.* at pp. 1198–1199.) The court rejected this

7

argument, explaining that "the clear weight of authority in the Courts of Appeal" holds that "[f]or purposes of analyzing whether section 1023 bars multiple convictions, the 'elements test based on statutory comparison of the crimes' is the correct (and only) test to apply when determining whether one crime is a necessarily included offense of another crime." (*Id.* at p. 1200.)

California's approach to this issue is buttressed by federal case law. Although federal courts have briefly considered other possible tests, the United States Supreme Court has agreed that the elements test is the most well suited for considering double jeopardy issues. For example, in *Grady v. Corbin* (1990) 495 U.S. 508 (*Grady*), the Unites States Supreme Court established an additional test for determining whether an offense was the same offense for the purpose of double jeopardy. (*Id.* at p. 510.) The court concluded that a subsequent prosecution is not only barred if it is the "same" under the elements test but also "if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted." (*Ibid.*)

However, only three years later, in *United States v. Dixon* (1993) 509 U.S. 688, 704 (*Dixon*), the United States Supreme Court overruled *Grady*, explaining that it lacked "constitutional roots." The Court acknowledged that the double jeopardy clause protects against both successive punishment and successive prosecution, but rejected the notion that the term " 'same offence' " has different meanings in the two contexts. (*Ibid.*) Pre-*Grady* cases supported the long-held understanding that subsequent prosecutions were permitted if the elements test—and only the elements test—was satisfied. (*Id.* at pp. 707–709.) Moreover, the rule articulated in *Grady* had already proved unstable and confusing in

8

application.  (*Id.* at pp. 709–710.)  Thus, *Dixon* marked a return to exclusive use of the elements test to determine which offenses are the "same" within the meaning of the double jeopardy clause, both in the context of multiple punishments and successive prosecutions.

This approach is consistent with section 1023.  That statute enacts the same double jeopardy principles discussed in *Dixon*.  (*Fields*, *supra*, 13 Cal.4th at pp. 305–306 [section 1023 "implements the protections of the state constitutional prohibition against double jeopardy, and, more specifically, the doctrine of included offenses"].)  In fact, the language of section 1023 supports the use of the elements test even more strongly than the language of the double jeopardy clause.  The double jeopardy clause refers only to the "same offence" (U.S. Const., 5th Amend.), leaving it to the courts to develop what that means.  In comparison, section 1023 refers to "necessarily included" offenses.  (See *Scott*, *supra*, 83 Cal.App.4th at p. 796 [explaining that the "key term" in the context of double jeopardy is "necessarily included," and it refers to offenses that are included under the elements test, not offenses that may be included based on the specific accusatory pleading].)

As set forth *ante*, Barooshian does not claim that application of the elements test would support his argument here.  Instead, he advocates for a new test.  To this end, Barooshian argues that gross vehicular manslaughter while intoxicated must be considered a "necessarily included" offense within the meaning of section 1023 because his proposed test furthers the statutory purposes of disallowing unfair repeated prosecutions, preventing the prosecution from fine tuning its strategy and thereby securing wrongful convictions, and protecting the principle of finality.  As a threshold matter, we note that Barooshian's new test requires us to ignore, at least to some

extent, the holdings of both *Sanchez*, *supra*, 24 Cal.4th 983 and *Hicks*, *supra*, 4 Cal.5th 203. This we cannot do. As an intermediate court of appeal, we are bound by the decisions of the California Supreme Court. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Further, Barooshian's new test for lesser included offenses is not well defined, is potentially unworkable, and is contrary to existing California law holding that the elements test is the correct and only test to determine necessarily included offenses in the context of double jeopardy and section 1023.

Here, in asking us to develop a test whereby we treat offenses as necessarily included even when they do not qualify under the elements test, Barooshian essentially is requesting an unprecedented extension of section 1023 to bar subsequent prosecution for offenses that are merely lesser related offenses. Not only is his approach contrary to the plain language of section 1023, which applies to "necessarily included" offenses only, it lends itself to many of the same pitfalls created by *People v. Geiger* (1984) 35 Cal.3d 510 (*Geiger*). There, the California Supreme Court determined that a trial court is required to instruct on lesser offenses when the defendant requests it, if the offense is closely related to the charged offense and the evidence provides a basis for finding the defendant guilty of the lesser, but innocent of the charged offense. (*Id.* at p. 531.) Further, the court indicated that the rule barring conviction of both a greater and lesser offense holds true as to lesser related offenses. In short, "[t]he conviction of a [lesser] related offense constitutes an acquittal of the charged offense." (*Id.* at p. 528.)

However, the California Supreme Court later rejected this approach in *People v. Birks* (1998) 19 Cal.4th 108 (*Birks*) when the court overruled *Geiger*.

10

(*Id.* at p. 113.)[5] The court determined that a defendant could not unilaterally require the instruction on an uncharged lesser related offense because such a requirement would be unfair to the prosecution and interfere with its charging determination. The court, however, also noted, with regard to such an instruction, "there can be no clear standards for determining when a lesser offense, though not necessarily included in the charge, is nonetheless related for instructional purposes. This leaves an accused potentially infinite latitude to argue a sufficient link." (*Id.* at p. 131.) The court added, "[t]he resolution of requests for instructions on lesser related offenses thus involves nuanced ' "questions of degree and judgment." ' [Citation.]" (*Ibid.*) In addition, the court noted that "California courts have since grappled earnestly but uncertainly with the numerous difficulties of applying *Geiger* to the diverse facts of individual cases." (*Ibid.* [listing appellate cases].)

Here, we believe Barooshian's proposed rule would give rise to some of the same concerns expressed by our high court in *Birks*, specifically that the proposed rule would be unworkable and lead to confusion. Barooshian purports to limit this rule to only apply to a charge of gross vehicular manslaughter while intoxicated and a *Watson* murder "when both crimes [are] prosecuted in the same trial." In this sense, Barooshian paints with a broad brush and assumes that all *Watson* murders are the same. They are not. Indeed, a defendant need not be intoxicated to be convicted for murder under a *Watson* theory. Rather, our high court made clear that a murder charge was appropriate in vehicular homicide cases if the evidence, including

___

[5] In overruling *Geiger*, the California Supreme Court noted that the rationale of that decision had "been unequivocally repudiated by the United States Supreme Court" in *Hopkins v. Reeves* (1998) 524 U.S. 88 and *Schmuck v. United States* (1989) 489 U.S. 705. (*Birks*, *supra*, 19 Cal.4th at p. 123.)

the defendant's conduct, showed implied malice that is, "when the conduct in question can be characterized as wanton disregard for life, and the facts demonstrate a subjective awareness of the risk created." (*Watson*, *supra*, 30 Cal.3d at p. 298.) True, a defendant becoming intoxicated and then driving a car recklessly is a typical *Watson* murder fact pattern, but intoxication is not required for every *Watson* murder. (See *People v. Moore* (2010) 187 Cal.App.4th 937, 941 [finding substantial evidence supported the defendant's second degree murder conviction because he was driving recklessly with a "wanton disregard of the near certainty that someone would be killed" despite not being intoxicated at the time].) Thus, we can imagine a scenario where a defendant is charged with murder under a *Watson* theory and gross vehicular manslaughter while intoxicated; the jury cannot reach a verdict as to the murder charge, but acquits on the gross vehicular manslaughter while intoxicated offense because there was reasonable doubt as to the defendant's level of intoxication. Under Barooshian's proposed test, double jeopardy would prohibit the prosecution from retrying the defendant on the murder charge despite the possibility that the defendant's level of intoxication could have no bearing on the prosecution's theory of murder in the second trial (e.g., the defendant was driving so recklessly that it would be sufficient evidence of implied malice).

Further, Barooshian's proposed test would require courts to treat a gross vehicular manslaughter while intoxicated offense unlike any of the other necessarily included offenses of murder. He proposes that his test apply only when a *Watson* murder offense and a gross vehicular manslaughter while intoxicated offense are tried in the same case. As such, a prosecutor could try a defendant for a charge of gross vehicular manslaughter while intoxicated and obtain a conviction then try that same defendant for a

12

*Watson* murder based on the same conduct. Such an approach would not run afoul of Barooshian's proposed rule. However, a prosecutor could not try a defendant for voluntary manslaughter, obtain a conviction, and then try that same defendant for murder based on the same conduct. Under that scenario, double jeopardy would be violated because voluntary manslaughter is a lesser included offense of murder. (See *People v. Duff* (2014) 58 Cal.4th 527, 561.) Consequently, it appears Barooshian's proposed test could potentially undermine, in certain cases, the very double jeopardy principles he strives to protect.

Our analysis does not change when we consider, as Barooshian urges us to do, that *Watson* murder and gross vehicular manslaughter while intoxicated are both "described" in section 191.5. That statute lists the elements of gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)) as well as the elements of vehicular manslaughter while intoxicated (§ 191.5, subd. (b)). In subdivision (e), *Watson* murder is mentioned: "This section shall not be construed as prohibiting or precluding a charge of murder under Section 188 upon facts exhibiting wantonness and a conscious disregard for life to support a finding of implied malice, or upon facts showing malice consistent with the holding of the California Supreme Court in People v. Watson, 20 Cal.3d 290." (§ 191.5, subd. (e).) Yet, we read nothing in this statute that supports Barooshian's arguments here. To the contrary, the statute indicates the Legislature's understanding that vehicular manslaughter and murder are separate offenses, which might, in some circumstances, encompass the same conduct. Accordingly, nothing in section 191.5 gives us pause regarding Barooshian's second trial and conviction for murder.

13

Barooshian further argues that his interpretation promotes common sense ideas of justice and is fair to both parties. Relying on *Fields*, s*upra*, 13 Cal.4th 289, Barooshian asserts that it would "make little sense" for a vehicular manslaughter conviction to bar prosecution for gross vehicular manslaughter without also barring retrial of "vehicular murder while intoxicated." However, Barooshian glosses over the fact no such crime as "vehicular murder while intoxicated" exists under California law. Barooshian was retried and convicted of second degree murder, based on implied malice. Further, Barooshian's other arguments regarding fairness rest on the assumption that gross vehicular manslaughter while intoxicated is a lesser included offense of murder. As Barooshian concedes, it is not. In this sense, Barooshian's arguments based on justice and fairness are flawed for two primary reasons. One, he relies on a crime that is not recognized under California law (vehicular murder while intoxicated). Two, he puts the proverbial cart before the horse by assuming that gross vehicular manslaughter is a lesser included offense of murder without any authority whatsoever. Indeed, controlling authority holds the opposite. (See *Sanchez*, *supra*, 24 Cal.4th at p. 989.)

In short, Barooshian has not shown that the straightforward application of section 1023 and of California Supreme Court authority offends double jeopardy principles or leads to an unjust result in the instant matter. Typically, California courts apply the elements test to determine if one crime is a lesser included offense of another. (See *Herrera*, *supra*, 136 Cal.App.4th at p. 1200.) Our high court has held that gross vehicular manslaughter while intoxicated is not a lesser included offense of murder. (See *Sanchez*, *supra*, 24 Cal.4th at p. 989.) And Barooshian has not persuaded us that we can or should ignore the elements test or somehow distinguish *Sanchez*.

14

In 1981, our high court first explained that reckless driving, especially while intoxicated, resulting in someone's death could constitute murder. (*Watson*, *supra*, 30 Cal.3d at pp. 294, 298–299.)  Thus, California has allowed a *Watson* murder theory for over 40 years.  Our high court decided *Sanchez* in 2001.  The Legislature has taken no action in response to *Sanchez*. Further, as California courts have repeatedly recognized, the Legislature has legitimate reasons for treating vehicular manslaughter differently than other types of manslaughter.  (See *Ingersoll v. Palmer* (1987) 43 Cal.3d 1321, 1338 [deterring drunk driving "undeniably serves a highly important governmental interest"]; *People v. Munoz* (2019) 31 Cal.App.5th 143, 161 [the Legislature had a rational basis "for creating the separate vehicular manslaughter statutes, namely to create a wider range of penalties for an all-too-common form of homicide"]; *Wolfe*, *supra*, 20 Cal.App.5th at p. 690 [giving prosecutors discretion to charge a defendant with implied malice murder without charging vehicular manslaughter serves "to appropriately punish— and also perhaps to discourage—people from engaging in the highly dangerous conduct of driving under the influence"].)

Against this backdrop, we decline Barooshian's offer to create a new test for double jeopardy involving gross vehicular manslaughter while intoxicated and murder.

## DISPOSITION

The judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

DO, J.

CASTILLO, J.

16