Filed 8/6/21  P. v. Seipel CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JAMES SEIPEL,<br><br>Defendant and Appellant. | E075442<br><br>(Super.Ct.No. FWV19002527)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Katrina West and Michael A. Knish, Judges.*  Affirmed.

Sally Patrone Brajevich, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

---

\*        Judge West presided over the trial.  Judge Knish conducted the sentencing.

A police officer tried to pull over defendant James Seipel for failure to signal before a lane change. Defendant stopped briefly, but then he took off again. During a short pursuit, he ran a red light, broke the speed limit, and violated various other traffic laws.

At trial, defendant represented himself. A jury found him guilty of reckless evading. (Veh. Code, § 2800.2, subd. (a).) The trial court found one "strike" prior to be true. (Pen. Code, §§ 667, subds. (b)-(i), 1170.12.) Defendant was sentenced to a total of two years, eight months in prison, along with the usual fines, fees, and ancillary orders.

Defendant contends that the trial court erred by:

1. Allowing defendant to appear before the jury in an orange jail jumpsuit.

2. Failing to instruct the jury not to draw an adverse inference from the fact that defendant was in custody.

3. Failing to instruct on expert opinion testimony.

4. Refusing to reduce the conviction to a misdemeanor.

5. Imposing fines and fees without holding a hearing on defendant's ability to pay.

We find no prejudicial error that has been preserved for appeal. Hence, we will affirm.

I

STATEMENT OF FACTS

The only trial witness was Ontario Police Officer Matthew Ellis.

2

On August 7, 2019, Officer Ellis was on patrol, in uniform, driving a marked patrol car. At 2:35 a.m., he was going south, when he noticed a car heading north. It was "swaying back and forth in the lane." Officer Ellis made a U-turn and fell in behind it. The car changed lanes, first to the right, and then back left again, without signaling.

Officer Ellis started a traffic stop by turning on his flashing red lights and siren. After going two or three blocks, the car pulled over. Defendant was the driver.

Officer Ellis called for backup. He got out of his car; he ordered defendant to turn off the car and to throw his keys out of the car. Defendant put his keys on the roof of his car instead. He was "antsy"; he kept looking back over both shoulders and in the rear view and side mirrors. Suddenly, he grabbed his keys back off the roof. Officer Ellis yelled "Stop," but defendant "peeled out."

Officer Ellis followed, once again with lights and siren on. Defendant made a left turn on red; two vehicles that had the green light had to "hit their brakes." He drove 85 or 90 miles an hour in a 55-mile-an-hour zone. Defendant also straddled the first and second lanes. Finally, he pulled into a gas station, stopped, and was arrested. The whole pursuit lasted three or four minutes and covered almost two miles.

Officer Ellis testified that peeling out (Veh. Code, § 23109, subd. (c)), running a red light (Veh. Code, § 21453, subd. (a)), making an unsafe turn (Veh. Code, § 22107), speeding (Veh. Code, § 22350) and lane-splitting (Veh. Code, § 21658, subd. (a)) are all point count violations. (See Veh. Code, § 12810, subds. (d)(1), (f).)

3

## II

## DEFENDANT'S APPEARANCE IN A JAIL UNIFORM

Defendant contends that the trial court erred by allowing him to appear before the jury in an orange jail jumpsuit. He also contends that the trial court erred by failing to instruct the jury not to draw an adverse inference from the fact that he was in custody.

A.      *Additional Factual and Procedural Background*.

As mentioned, defendant chose to represent himself at trial. In a discussion of pretrial matters, there was this exchange:

"THE COURT: Mr. Seipel, usually the defendant has someone bring him or her some civilian clothing, so you don't appear in front of the jury in your orange jumpsuit where they can see that you're being housed at the jail. Do you have someone that can bring you some clothes that you can change into so that you're not in your orange jumpsuit?

"THE DEFENDANT: Possibly. [¶] . . . [¶] . . .

"THE COURT: Have them come to this department, Mr. Seipel, if someone has clothing for you, have them come to this department and speak to my deputy, so my deputy can explain to them where to take the clothing, okay?

"THE DEFENDANT: Okay."

There was no further discussion of the matter. Defendant's girlfriend was present during this exchange, and she also attended the trial. Nevertheless, during the trial,

defendant evidently wore an orange jumpsuit; when Officer Ellis identified him as the driver, he said, "He's seated in the defense seat, wearing an orange jumpsuit."

B.      *Letting Defendant Appear in an Orange Jumpsuit.*

Defendant never objected to wearing an orange jumpsuit. Therefore, he forfeited the contention that it was error to let him do so. "[A]lthough the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." (*Estelle v. Williams* (1976) 425 U.S. 501, 512-513; accord, *People v. Taylor* (1982) 31 Cal.3d 488, 495-496.)

Defendant asserts that any waiver of the right not to appear in jail clothing must be express and on the record. *Williams* and *Taylor*, *supra*, are to the contrary. "While . . . the safer practice is for the trial court to take a personal waiver from a defendant regarding his right to wear ordinary clothing before the commencement of a jury trial, the court is under no sua sponte duty to raise the issue." (*People v. Williams* (1991) 228 Cal.App.3d 146, 151.)

In his reply brief, defendant argues for the first time that he had no access to civilian clothes. He notes that he had been in custody for three months; at one point, he at least claimed that he had been living out of his car. This is insufficient to establish that he could not get clothes. When the trial court asked if someone could bring him clothes,

he did not say no; he said, "Possibly." His girlfriend was in the courtroom. Had he objected, the trial court could have asked whether she could bring him some clothes. It might even have authorized funds to buy clothes. Instead, he never raised the subject again. Defendant failed to make a record, and thus he failed to preserve this claim.

Separately and alternatively, the asserted error was harmless. "To compel a defendant to go to trial wearing jail clothing violates his constitutional rights to a fair trial, due process, and equal protection. . . . Nevertheless, the error is not reversible per se, but may be found harmless beyond a reasonable doubt under the *Chapman* standard [citation]. [Citations.]" (*People v. Meredith* (2009) 174 Cal.App.4th 1257, 1262-1263.) "Applying that test, we ask 'whether it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error.' [Citation.]" (*People v. Canizales* (2019) 7 Cal.5th 591, 615.)

An error may be held harmless under *Chapman* when "the evidence . . . is 'of such compelling force as to show beyond a reasonable doubt' that the erro[r] 'must have made no difference in reaching the verdict obtained.' [Citation.]" (*People v. Harris* (1994) 9 Cal.4th 407, 431, fn. omitted; see, e.g., *In re Avena* (1996) 12 Cal.4th 694, 731 [defendant's appearance in jail clothes was harmless, "[g]iven that [he] confessed his culpability in a taped confession, and was identified as the killer by [a] coparticipant . . . ."].)

This was an open-and-shut case.  The prosecution conclusively proved every element of the crime with overwhelming and uncontradicted evidence.[1]  Defendant did not deliver an opening or a closing argument.  He did not so much as cross-examine Officer Ellis.

Defendant argues that it was "debatable" whether he acted with wanton disregard for safety.  Reckless evading, as defined by Vehicle Code section 2800.2 requires that "the pursued vehicle is driven in a willful or wanton disregard for the safety of persons or property . . . ."  (Veh. Code, § 2800.2, subd. (a).)  However, the statute further provides that "a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count . . . occur . . . ."  (Veh. Code, § 2800.2, subd. (b).)  Proving three point count violations is an alternative to proving the defendant's actual state of mind.  (*People v. Taylor* (2018) 19 Cal.App.5th 1195, 1203.)  Officer Ellis testified that defendant committed not just three but five point count violations.  Defendant's only argument as to why this does not show harmless error is that "the jury may have questioned the officer's credibility."  On this record, that is wishful thinking.

---

[1]    The prosecutor's presentation was so thorough that, at one point, defendant objected that it was "highly repetitious"; the trial court agreed, "It is, indeed, highly repetitious."

For the sake of completeness, we note that the jury was not correctly instructed on point count violations as a way of proving willful or wanton disregard.[2]  The trial court instructed the jury on reckless evading using CALCRIM No. 2181.  It included the language requiring the jury to find that "[d]uring the pursuit, the defendant drove with willful or wanton disregard for the safety of persons or property."  It also instructed that "California Vehicle Code sections 23109(c), 21453(a), 22107(a) [*sic*], 22350(a) [*sic*], [and] 21658(a) are each assigned a traffic violation point."  However, it omitted the language that would have allowed the jury to find instead that "[d]uring the pursuit, the defendant committed three or more violations, each of which would make the defendant eligible for a traffic violation point."  (See CALCRIM No. 2181.)

Defendant does not argue that this omission affects the harmless error analysis in any way; thus, he has forfeited any such contention.

We note, however, that in closing argument, the prosecutor told the jury:  "Wanton disregard for safety.  There are a couple of definitions for this.  The first one is a person who acts with wanton disregard for safety is aware that his actions present a substantial and unjustifiable risk for harm, and he intentionally ignores that risk. . . .  Another definition:  Driving with willful or wanton disregard for persons or property, including, not limited to causing damage to property while driving or committing three or more traffic violations that are each assigned a traffic violation point."

---

[2]  We commend the People for their candor in pointing this out.

8

He also said: "I want to focus specifically on driving with willful or wanton disregard for safety of persons or property . . . . In this definition, a person drives with willful or wanton disregard for safety if they commit three or more traffic violations that are each assigned a traffic violation point." He then proceeded to list the point count violations that defendant had committed. Defendant did not object, and the trial court did not interrupt.

On this record, we are convinced, beyond a reasonable doubt, that despite the absence of the appropriate instruction, the jury knew that it could rely solely on proof of three point count violations in finding willful or wanton disregard.

C.      *Failure to Instruct on Defendant's Custody Status*.

Defendant did not request an instruction on the fact that he was in custody. He does not cite any case holding that the trial court must give such an instruction sua sponte. Rather, he analogizes to CALCRIM No. 204, the instruction to be given when the defendant is visibly physically restrained, which must indeed be given sua sponte. (*People v. Duran* (1976) 16 Cal.3d 282, 291-292.) Arguably, however, the situation here is more analogous to stationing a guard at the witness stand while the defendant testifies, which entails no such sua sponte duty to instruct. (*People v. Stevens* (2009) 47 Cal.4th 625, 642.)

We need not decide whether the trial court had a duty to instruct sua sponte, because its failure to do so was harmless under any standard. As already stated (see part II.B, *ante*), the evidence of defendant's guilt was overwhelming and undisputed.

FAILURE TO INSTRUCT ON EXPERT OPINION TESTIMONY

Defendant contends that the trial court erred by failing to instruct on expert opinion testimony.

A. *Additional Factual and Procedural Background.*

The trial court did not give CALCRIM No. 332, which would have told the jury:

"A witness was allowed to testify as an expert and to give opinions. You must consider the opinions, but you are not required to accept them as true or correct. The meaning and importance of any opinion are for you to decide. In evaluating the believability of an expert witness, follow the instructions about the believability of witnesses generally. In addition, consider the expert's knowledge, skill, experience, training, and education, the reasons the expert gave for any opinion, and the facts or information on which the expert relied in reaching that opinion. You must decide whether information on which the expert relied was true and accurate.

"You may disregard any opinion that you find unbelievable, unreasonable, or unsupported by the evidence." (CALCRIM No. 332, with options appropriate for this case.)

It did give CALCRIM No. 333 regarding a lay witness's opinion testimony:

"Witnesses who were not testifying as experts gave their opinions during the trial. You may, but are not required to, accept those opinions as true or correct. You may give the opinions whatever weight you think appropriate. Consider the extent of the witness's

opportunity to perceive the matters on which his or her opinion is based, the reasons the witness gave for any opinion, and the facts or information on which the witness relied in forming that opinion. You must decide whether information on which the witness relied was true and accurate. You may disregard all or any part of an opinion that you find unbelievable, unreasonable, or unsupported by the evidence."

B.      *Discussion.*

When expert opinion testimony is admitted, the trial court has a duty to give CALCRIM No. 332 or a similar instruction sua sponte. (Pen. Code, § 1127b.) Defendant asserts that Officer Ellis's gave expert opinion testimony by testifying that defendant's actions during the pursuit constituted point count violations.[3]

Preliminarily, the People contend that defendant forfeited this contention by failing to request CALCRIM No. 332. They contradict their own contention, however, by conceding that when expert testimony has been introduced, CALCRIM No. 332 must be given sua sponte.

We may assume, without deciding, that Officer Ellis did give expert opinion testimony. Even if so, the failure to give CALCRIM No. 332 was harmless.

"""[T]he erroneous failure to instruct the jury regarding the weight of expert testimony is not prejudicial unless the reviewing court, upon an examination of the entire cause, determines that the jury might have rendered a different verdict had the omitted

---

[3]      Defendant does not contend that this was not a proper subject of either expert or lay opinion testimony and thus has forfeited any such contention.

11

instruction been given.  [Citations.]"'  [Citations.]"  (*People v. Williams* (1988) 45 Cal.3d 1268, 1320.)

CALCRIM No. 332 and CALCRIM No. 333 are substantially similar.  The only meaningful difference between them is that the former tells the jury to "consider the expert's knowledge, skill, experience, training, and education . . . ."  Here, the prosecution established Office Ellis's background, training, and experience as a police officer for three years.  The more the jury considered these matters, the more likely it would be to find him credible.  The failure to give CALCRIM No. 332, if it had any effect at all, actually helped defendant.

In arguing that the error was prejudicial, defendant cites *People v. Ruiz* (1970) 11 Cal.App.3d 852.  There, however, two expert witnesses testified *for the defense*.  (*Id*. at p. 861.)  They "expressed the opinion defendant was insane in the legal sense at the time of the robbery."  (*Id*. at p. 862.)  The appellate court concluded, "Defendant could not have a fair trial on the issue of sanity where his only evidence was the testimony of psychiatrists uncontradicted by the testimony of another psychiatrist unless the jury were instructed as to the manner of treating such expert testimony."  (*Id*. at p. 863.)  Here, where the *prosecution's* only evidence was the testimony of an expert, uncontradicted by the testimony of another expert, the reasoning in *Ruiz* applies in reverse, and the error must be held harmless.

IV

## FAILURE TO REDUCE THE CONVICTION TO A MISDEMEANOR

Defendant contends that the trial court erred by refusing to reduce his conviction to a misdemeanor.

A.      *Additional Factual and Procedural Background.*

At the preliminary hearing, at which defendant had appointed counsel, defense counsel moved to reduce the charge to a misdemeanor.  The prosecutor opposed the motion on the ground that defendant had a prior robbery conviction.  The magistrate denied the motion.

Before trial, defendant moved again to reduce the charge to a misdemeanor.  He did not offer any argument in support of the motion.  The prosecutor objected, noting that defendant had been held to answer for a felony.  The trial court denied the motion, "for lack of legal or factual basis."

At sentencing, defendant had appointed counsel again.  However, defense counsel did not renew the motion.  Defendant does not contend that this constituted ineffective assistance of counsel.

B.      *Discussion.*

Some crimes can be either a felony or a misdemeanor; these are called wobblers.  Reckless evading is a wobbler.  (Veh. Code, § 2800.2, subd. (a).)

"The trial court has the sole discretion, under [Penal Code] section 17(b), to treat a wobbler as a felony or a misdemeanor for sentencing purposes.  [Citation.]"  (*People v.*

13

*Lee* (2017) 16 Cal.App.5th 861, 866.)  Relevant factors include "'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' [Citations.]  When appropriate, judges should also consider the general objectives of sentencing such as those set forth in California Rules of Court, rule [4.]410." (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978, fn. omitted.)

A trial court can reduce a wobbler even when the defendant has a strike prior. (*People v. Superior Court* (*Alvarez*), *supra*, 14 Cal.4th at pp. 980-981.)

"'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]'" (*People v. Superior Court* (*Alvarez*), *supra*, 14 Cal.4th at pp. 977-978.)

Defendant does not contend that the *magistrate* erred.  He contends only that the *trial court* erred.  He argues:  "The brief pursuit lasted only three to four minutes for about a mile[4] and there were few cars on the road early in the morning.  No weapons were involved, and nobody was harmed."  He notes that he "was taken into custody peacefully without further incident."  He also claims that his prior robbery conviction was merely for stealing beer while unarmed.  Finally, he points out that he "was professional representing himself, he did not delay or disrupt the proceedings, and he never posed a security risk."

---

**4**     *Sic*; the testimony at trial was that it went "almost two miles."

14

The problem is that defendant made the motion before trial, and when he did, he did not raise these particular arguments.

The magistrate had the authority to reduce the charge before trial. (Pen. Code, § 17, subd. (b)(5).) The trial court did not. It could do so only after conviction, by imposing a misdemeanor sentence. (Pen. Code, § 17, subd. (b)(1); *People v. Superior Court* (*Jalalipour*) (2015) 232 Cal.App.4th 1199, 1205-1208.

In any event, defendant forfeited his present arguments because he never raised them below. For the same reason, we can hardly say the trial court abused its discretion by failing to consider them.

The trial court additionally did not abuse its discretion because it had not yet heard any *evidence* of any of these facts. Had there been a statement of facts in the prosecution's motions in limine, that would not be evidence, but arguably the trial court could have treated it as a concession or an offer of proof. However, there was none.

In sum, the trial correctly ruled that defendant had provided no "legal or factual basis" for his motion.

V

THE IMPOSITION OF A RESTITUTION FINE

WITHOUT A HEARING ON ABILITY TO PAY

Defendant contends that the trial court erred by imposing fines and fees without holding a hearing on his ability to pay.

15

A.      *Additional Factual and Procedural Background.*

The trial court found that defendant was unable to pay presentence investigation costs (Pen. Code, § 1203.1b).  However, it did impose a $300 restitution fine (Pen. Code, § 1202.4), a $300 parole revocation restitution fine, stayed (Pen. Code, § 1202.45), a $40 court operations assessment (Pen. Code, § 1465.8), and a $30 court facilities assessment (Gov. Code, § 70373).  Defense counsel did not object.

B.      *Discussion.*

Defense counsel forfeited this contention by failing to object below.  (*People v. Torres* (2020) 47 Cal.App.5th 984, 991; see generally *People v. Scott* (1994) 9 Cal.4th 331, 353.)  This is not a case in which the failure to object can be excused because an objection would not have been supported by the law as it then stood.  (See generally *People v. Perez* (2020) 9 Cal.5th 1, 7.)  Defendant's contention is founded on *People v. Dueñas* (2019) 30 Cal.App.5th 1157.  *Dueñas* was decided in January 2019; defendant was sentenced in July 2020.  Defendant does not contend that the failure to object constituted ineffective assistance of counsel.

## VI

## DISPOSITION

The judgment appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

SLOUGH

J.

FIELDS

J.

17